McNAIR *et al.*, Appellants, v. LOTT *et al.*, Respondents.

1. To extinguish or bar an equity of redemption, where lapse of time alone is relied on, twenty years must have elapsed since the last recognition of the mortgage.
2. A demurrer should be resorted to to raise the defence of the statute of limitations, if at all, only where it clearly appears that the plaintiff's case has been fully stated, and that being so stated no recovery can be had.
3. A., in the year 1819, to secure the repayment of a loan of money, executed an instrument in the French language in the form of a French hypothecation and containing the words, " *obligé, engagé, alliené, affecté et hypothequé: held,* that this was a mortgage within the act of October 20, 1807, concerning mortgages. (1 Terr. Laws, p. 182.)

*Appeal from St. Louis Land Court.*

Demurrer to a petition. Plaintiffs state in their petition substantially that in the year 1819, the late Col. Charles Dehault Delassus was the owner and proprietor of, and as such had possession of, a certain tract of twenty arpens, known as survey No. 332, in the name of Joseph Brazeau; that afterwards said Charles became indebted to Baptiste Douchouquette and Marie Therese Brazeau, in the sum of $4000, for money loaned him, for which he agreed to pay each at the rate of ten per centum per annum until paid; and to secure the payment of one-half of said sum to each, he did on the 7th day of January, in the year 1819, execute and deliver to each of them his four several promissory notes, each for the sum of $200, due and payable on the 20th December, in the years 1819, 1820, 1821, and 1822, with interest on each at the same rate from maturity; that he at the same time made and delivered to each a deed of conveyance, in the nature of a mortgage,* of and to said tract of land, which said deeds had conditions that in the event said Charles paid the sum

---

* The following is the hypothecation to Duchouquette: " Sachent tous ceux qui ces presentes verront que moi, Charles Dehault Delassus, du comté de St. Louis, Territoire du Missouri, pour prix et en consideration de la somme de deux mille huit cent piastres, que je declare bien et legitimement devoir et

McNair v. Lott.

of $2000 to each on or before the 20th of December, 1823, with interest, the said deeds were to become inoperative, and said interest notes not due were to be delivered up and canceled; that said deeds and notes were signed and sealed, and were written in the French language; were accepted and were duly recorded; that in the year 1819, by written agree-

promets de bien et duement payer a Baptiste Duchouquet, du dit comté, comme suit savoir, deux cent piastres au vingt Décembre prochain, deux autres cent piastres au vingt Décembre suivant, deux autres cent piastres au vingt Décembre encore suivant, deux autres cent piastres au vingt Décembre encore suivant, pour lesquelles sommes j'ai consenti au dit Baptiste Duchouquet mes billets en datte du jour de la datte des presentes, et enfin la somme de deux mille piastres au vingt Décembre de l'anneé mil huit cent vingt trois, le tout pour valeur recue; pour sureté et payement de la dite somme de deux mille huit cent piastres, j'ai engagé, alliené, affecté et hypothequé, comme de fait et par ces presentes j'engage, allienc, affecte et hypotheque, une terre seize et situeé a environs un mille au sud de la ville St. Louis, sur laquelle je reside, ayant deux arpens front au Mississippi et courant vers l'ouest jusqu'au chemin qui conduit de cette ville a Carondelet, borneé au sud par Bernard Pratte, et nord par la terre concedeé a Joseph Brazeaux, a present défunt, etant la meme terre que j'ai acquise de Theodore Hunt et Anne, son épouse, ainsi qu'il est constaté par acte enregistré en l'office du Recorder de ce comté, livre F pages soixante-treize et suivantes; de plus affectant, allienant, engageant et hypothequant également la juste demie ou moitié d'une terre de dix mille arpens seize et situeé sur une des branches de la riviere a Renau qui tombe dans la grande riviere qui perd ses eaux dans la riviere Marameck, et à environs cinquante cinq milles a l'ouest nord ouest de Ste. Genevieve, bornée du cote du nord et de l'ouest par des terres vacantes, du cote du sud par les terres des habitans de la Mine a Breton, et du coté de l'est par un branche de riviere qui perd ses eaux dans le riviere Marameck, la quelle demie ou moitié j'ai acquise de Pierre Chouteau et Brigette, son epouse, par acte de ce jour; promettant, m'obligcant, et m'engageant de ne vendre, engàger, alliener ou affecter la dite proprieté avant le payement final des sommes cy dessus et aux termes y expliqués sous peines de toute nullité et de tous dépens, dommages et interets. Il me sera cependant loisible, en tel tems que soit avant le vingt Décembre de mil huit cent vingt trois, d'obtener mainleveé du present hypothèque en remboursant et payant au dit Baptiste Duchouquet, ou a son representante la sus dite somme de deux mille piastres, avec interet a raison de dix pour cent à compter du jour du vingt Décembre precedent le dit remboursement et payement; et au jour du dit payement et remboursement le dit Baptiste Duchouquet, ou son representant, me remettra les billets cy dessus mentionnés qui resteront à echeoir. En foi de quoi j'ai signé et scellé ces presentes à St. Louis ce sept Janvier de l' anneé de Notre Seigneur mil huit cent dix-neuf. [Signed] Charles Dehault Delassus, [seal.]"

ment made between said Baptiste and Marie, the former was vested with power to manage her estate, and at her death became absolute owner thereof; that he assumed such management during her life and at her death owned and claimed her property, including the debt due as aforesaid; that the first interest note due said Marie was paid and canceled; that the one first due said Baptiste was reduced by credits to fifty-five dollars; that afterwards the remainder of said indebtedness being due and unpaid, said Baptiste, in the name of himself and said Marie respectively, instituted proceedings in the Circuit Court of said county—one to foreclose the equity of redemption of said Charles under said deeds and sell said lands—the other by action of assumpsit to obtain judgments for said debts due each as aforesaid; that at the July term of said court, 1824, without service of process, judgments were rendered in favor of each for the sale of said land on a particular day named; also for the principal and interest due each and secured by said deeds in the actions of assumpsit; whereby each obtained judgments in two forms of proceedings in the same court, at the same time, for the same debt due each as aforesaid; upon each of which judgments executions issued in 1824, and were not executed but returned by order of plaintiffs to clerk's office. Afterwards, in 1827—said Charles then being a resident of the state of Louisiana, and said judgments unsatisfied — said Baptiste, with the knowledge of one Theodore D. Papin, his agent and son-in-law, caused a *fi. fa.* to issue against said Charles (then absent) on the judgment in assumpsit in his name, and the said tract or survey levied on, and all the right, title, estate, &c., of said Charles therein sold subject to all prior judgments and decrees; that said Papin became the purchaser at the bid of $1050; that before and at the time of said levy, sale and purchase by Papin, said tract of land was in the actual possession, use and enjoyment of the said Baptiste in virtue of said mortgage deeds; that Papin, with full knowledge of all the above facts in regard to said judgments and land, and knowing that his said purchase was void and in-

operative, did, on the 19th day of December, 1827, purchase of said Baptiste and Marie their right and estate in said tract of land, and received possession· thereof, and a deed of conveyance thereof; that afterwards said Marie died and by the said agreement made with said Baptiste, in 1817, her interest in said judgments passed to and became vested in him; that in 1834 said Baptiste made his will, constituting said Papin and his son Baptiste Douchouquette, executors thereof, and then died; that said will was duly proved; that said Papin and Baptiste the son assumed on themselves, in due form of law, the execution thereof; that afterwards, on the 16th of December, 1836, said Charles paid to the executors the full amount of each of said judgments or debts secured by said deeds of mortgage; that as evidence thereof Papin and Douchouquette, as executors, in the vacation of said Circuit Court, in the presence of the clerk thereof, did on the minutes or record of each of said judgments enter on the margin of each an acknowledgment of " full and entire satisfaction," which acknowledgment was signed by them and attested by the clerk, whereby said Charles became released from said judgments; that from neglect or ignorance they failed to enter a like acknowledgment in the margin of the record of said deeds of mortgage in the recorder's office; that they failed to execute a deed of release of said land as required by law; that said Papin had assigned and transferred his right to the use and possession of said land, excluding said mortgage debts, to one William T. Phillips, who entered and took possession of the same with full knowledge of all the before recited facts in regard to said land; that after the payment of said judgments, in 1836, said Charles returned to his home in the state of Louisiana and there died intestate, leaving Augustus Delassus, his only child, heir and legal representative, who did not come to the knowledge of his right and claim to the land until 1848; [various deeds of conveyance are here set forth from said Augustus Delassus to plaintiffs;] and the plaintiffs charge and aver that the execution, under which said Papin purchased said land in 1827, issued on a

judgment for the identical debt due said Duchouquette, and to secure the payment of which said deed of mortgage was executed by said Charles in 1819, and none other; that the same was in due form of law paid and satisfied in 1836—all of which was known to said defendants and each of them at the time they entered and took possession of said land; that said defendants, and each of them and those under whom they claim parts of said land, entered and took possession of the same under the right and title of the said Charles, and none other; that they now refuse to surrender possession thereof and release their claim, although requested so to do; that said defendants, and each of them, and those under whom they claim, and hold parts of said land, entered and took possession thereof as trustees by deeds of assignment from said mortgagees, Baptiste and Marie, to Papin and from him to said Phillips as aforesaid; that the sale and purchase under said execution by Papin, was a fraud on the rights of said Charles, and the deed executed by the sheriff as evidence thereof was inoperative and void; that should said sheriff's deed to Papin be considered valid and operative to pass the right of said Charles to redeem said land, then plaintiffs charge that the payment of said mortgage debts and judgments by said Charles, in 1836, did vest in him all the right of said mortgagees, Baptiste and Marie, to subject said tract of land to the payment of said debts in the possession of defendants, assignees of said Papin, as before stated; that since said land was surveyed, in 1836, there has been much accretion thereto on the river front by deposit and other causes, all of which is the property of plaintiffs, and is now claimed by defendants as assignees of said Papin; that no part of the rent of the said tract has been accounted for to the said Charles in his lifetime or since his death, to his son and legal representatives or plaintiffs; nor has the said sum of $10,693.28 paid by said Charles, in 1836, to the executors of Douchouquette, or any part thereof, been refunded to him, his said son, or plaintiffs. Wherefore plaintiffs pray that defendants, and each of them, be compelled to surrender to

plaintiffs said land and the accretions thereto, as now held and claimed by them, and by proper deed release all right thereto as derived from said Papin; or, that said land be subjected to the payment of said two mortgaged debts paid by said Charles, in 1836, with interest thereon, to-wit, said sum of $10,693.28; that plaintiffs be restored to the possession and quiet enjoyment of said land and all accretions thereto, with a reasonable compensation for the rents and profits of said land, and damages, &c., and for such other and further relief, &c.

This petition was filed in the St. Louis Land Court Feb. 22, 1856. The defendants demurred to the petition, and set forth as grounds of demurrer that the petition does not state facts sufficient to show a cause of action; that there is a defect of parties plaintiff; also of parties defendant; that all the parties appearing to be interested and through whom the defendants severally claim title, are not made parties defendant; that the petition is multifarious in various respects; that it does not show that all the parties claim through a common source of title, nor does it show of what specific land either of defendants stand seized or possessed, nor who is seized, nor through whom they or either of them claim title; that plaintiffs do not show what specific relief they are entitled to, nor do they show that they are entitled to any relief; nor do they show how they claim general damages against all the defendants jointly, when it appears that each defendant is entitled in his own right; also that the prayer for judgment is incongruous and inconsistent in claiming the possession of the land or the payment of the amount of the mortgage debt.

The demurrer was sustained.

*Cates* and *Buckner*, for appellants.

I. The petition is not multifarious. All persons who have a real interest in the subject matter—title and possession of the land—are before the court.

II. The facts stated in the petition present an equitable cause of action not prejudiced by lapse of time. 1st. In

virtue of sheriff's sale and deed to Papin, no right or title passed ; but, on the contrary, was void and inoperative. (2 Burr. 969 ; 2 Johns. Ch. 130 ; 7 Dana, 66 ; McNair v. O'Fallon, 8 Mo. 203 ; Robertson v. Campbell, 8 Mo. 615 ; 12 Mo. 117.) 2d. The deeds of assignment from the mortgagees to Papin, and from him to Phillips, and from him to respondents, vested no right or claim, other than to hold the *naked possession* of the mortgaged land subject to the redemption of Delassus. (2 Sto. Eq. 1019–23 ; 2 John. Ch. 129 ; 14 Pick. 331 ; 17 Mass. 419, 289 ; 1 Hill on Mortg. 163 ; 9 Mo. 280 ;. 4 Johns. 43.) 3d. The payment of the mortgage debts, in 1836, to the executors of Duchouquette, and satisfaction thereof entered on the records of the judgments, was notice to respondents of such payment, whereby their right to possession ceased. 4th. As no evidence of payment was entered on the margin of the record of the mortgage deeds or release executed, as required by law, the remedy of appellants is in *equity*, in order to reclaim possession, and, at the same time, quiet their title. (2 Burr. 978 ; 17 Mass. 419 ; 10 Mo. 229 ; 1 Terr. Laws, p. 46 ; R. C. 1825, p. 410, § 15 ; R. C. 1835, p. 340, § 18 & 22.) 5th. Until 1836, Delassus or his legal representatives had no right of *entry* or *cause of action.* Hence lapse of time has not operated to their prejudice before or since that period. 6th. As respondents, and those under whom they claim, are mere *tenants or quasi trustees*, limited and subservient to the *relation* of mortgagor and mortgagee, they are precluded from protection by lapse of time in a court of equity. 7th. Whether any title in the equity passed to Papin, or whether payment of mortgage debts was properly made to him or not, still, under all the circumstances and facts of this case, lapse of time does not operate against appellants. (See 2 B. Monr. 206 ; 9 Wheat. 498 ; 2 Hill. on Mortg. 1–12 ; 2 Mo. 94.)

*B. A. Hill, R. M. Field, C. Gibson* and *Whittelsey,* for respondents.

I. The statute of limitations is a complete bar to the relief sought, no disability being shown to have existed when the

right to redeem first accrued or descended. The laches bars all claim, and may be relied upon on demurrer. (Taylor v. Blair, 14 Mo. 437 ; Smith v. Clay, 3 Brown Ch. 640 ; Demarest v. Wyncoop, 3 John. Ch. 129 ; Kane v. Bloodgood, 7 John. Ch. 93 ; Provost v. Gratz, 6 Wheat. 481 ; Hughes v. Edwards, 9 Wheat. 489 ; Willison v. Matthews, 3 Pet. 44 ; Piatt v. Vattier, 9 Pet. 416 ; Elmendorf v. Taylor, 10 Wheat. 168 ; Miller v. McIntyre, 6 Pet. 67 ; Hunt v. Wickliffe, 2 Pet. 212 ; 5 Pet. 493 ; Bollinger v. Chouteau, 20 Mo. 90 ; Biddle v. Mellon, 13 Mo. 335 ; Keeton's heirs v. Keeton, 20 Mo. 531.)

II. In order to redeem, all parties in interest must be made parties to the bill. Only a portion of those interested against the plaintiffs are made parties to the case at bar.

III. If Papin could ever have been regarded as a trustee for the plaintiffs, the purchase of the land at sheriff's sale, and entry thereunder upon the land claiming the same as his own, was an open and notorious disclaimer of the trust, and the statute commenced running from that time. (20 Mo. 530 ; 20 Mo. 488 ; id. 89.) After the conveyance in 1831 to Phillips, Papin could not in any way affect the rights of his own vendee. Having parted with all his rights to the property in 1831 to persons who in 1836, when he settled with Delassus, were holding adverse to him and Delassus, his power over the property was gone.

IV. The instrument claimed to be a mortgage is not a mortgage, but a French hypothecation, passing no estate in the land, being a mere pledge of the land to secure the debt; and being a mere lien on the land, it was lawful for the same to be sold under the judgment in assumpsit, and the sale to Papin, who at the time held no interest in the land, passed the title.

V. The claim is stale. The settlement between Delassus and Papin took place December 16, 1836. The petition in this case was filed February 2, 1856, within a few months of twenty years from date of the settlement. (See Taylor v. Blair, 14 Mo. 437.)

SCOTT, Judge, delivered the opinion of the court.

In cases where the statute of limitations would be a bar to an action at law, if the remedy is pursued in chancery, equity following the law requires the same length of time, as a defence by way of limitation, that is required in the action at law. As between mortgagor and mortgagee, when time alone is relied on as a bar, twenty years is the shortest period prescribed by law as a limitation to an ejectment; so the same period is adopted in equity as a defence to a bill to redeem. When other defences are set up, time may be a circumstance in support of them; but as a bar of itself, it must be for at least twenty years from the last act recognizing the relation of mortgagor and mortgagee. The period within which an action at law must be brought being prescribed by statute, if the remedy is sought in a court of chancery, the same limitation must be observed, and courts of equity will not permit a party to abandon the statutory bar, and relying on a shorter period set up as a defence to the relief sought by the bill the staleness of the demand.

The theory of this action is, that Papin was the person to receive the mortgage debt, and having received it within a period short of twenty years, the statute of limitations furnishes no defence to the relief sought by the plaintiffs. The petition states that Papin had assigned and transferred his right to the use and possession of said land, *excluding said mortgage debts*, to one Wm. T. Phillips, who entered and took possession of the same with full notice of all the before recited facts in regard to said land. This needs explanation, and it can only come by way of answer. If Phillips took with notice of the mortgage, should not the acts and conduct on his part and the part of his alienees, direct and indirect, be proved, which would show that he held adversely to it, and claimed by virtue of the sheriff's sale in 1827. So late as the time of Lord Redesdale it was thought that the defence of the statute of limitations could not be taken advantage of by a demurrer; and though the law has been since otherwise

McNair v. Lott.

settled, yet it is obvious that such a mode of using the statute of limitations should only be employed, if at all, where it plainly appears that the plaintiffs' case is fully stated, and it is clear that he can not recover. The parties have framed their petition on a theory which would not admit of a defence growing out of the statute of limitations by way of a demurrer, and therefore it can not be expected that they would state by way of anticipation in their petition the facts which would repel such a defence. It is clear that a defence arising out of the statute of limitations could not be used by way of demurrer to an action at law. All distinction between actions is now abolished. Shall then the rule that prevailed in actions at law be adopted, or that which obtained in courts of equity? Or shall the distinctions between actions at law and suits in equity be kept up in order to ascertain when the defence growing out of the statute of limitations shall be a plea or demurrer? If considerations of convenience are to determine this question, there can be but little doubt that the rule at law will be preferred.

The main point relied on in support of the demurrer is, that the instrument of mortgage or that by which the lien was created was a French hypothecation, and is not within the statute of 20th October, 1807, concerning mortgages in force at the time; consequently, that there is nothing to prevent the land on which the lien was given from being sold by virtue of an execution on a general judgment for the debt secured by the hypothecation. Without stopping to inquire whether land, in the situation supposed, could be effectually sold on a general judgment for the debt secured by the lien, we will consider the proposition made in support of the demurrer. In doing this, it must be borne in mind that the statute under consideration was enacted before the introduction of the common law; that the then territory had but a few years previously been a French colony, and contained many French inhabitants speaking the language and employing the forms of instruments in evidencing their contracts which were in use among that people. Under such circumstances,

it is reasonable to suppose that the general assembly, in legislating on the subject, would have an eye to the contracts of the French as well as to those of the American population. The language of the act shows that the legislature was aware of the state of things under which it was acting. The words are, " *any person holding an instrument in writing purporting to be a mortgage*," &c. The original words of the instrument in the clause of alienation, are " *obligé, engagé, aliené, affecté et hypothequé*." These, under our law, would be sufficient to convey a title. The other parts of the instrument sufficiently show that an *hypotheque* was intended, which is the French word for a mortgage. A title is conveyed, and it appears from the body of the instrument that it was passed as a security for a debt. Is not that the very thing contemplated by the act? The parties designate it by a word which we in our language translate " mortgage." The language of the instrument shows that it was designed for the purpose which is intended by a mortgage under our law. There is no reason why one, who makes an instrument like that under consideration, should not have all the advantages to be derived from a formal mortgage under our law. In executing a French *hypotheque* nothing more or less was intended than what is contemplated by a mortgage. The two instruments then should receive the same favor from the law.

As this cause will be remanded, we will make a suggestion or two which may be of some service in its future progress. It does not appear whether the sum received by Papin in 1836 from Governor Delassus was the entire mortgage debt, or whether it was the balance due after deducting the sum of $1050 made by a sale of the lot in dispute in 1827; whether Delassus, in paying the amount in 1836, supposed he was paying the balance of the debt due, considering the mortgaged lot as sold and passed away from him, or whether he paid under the belief that he was relieving all the mortgaged property from the incumbrance. We would know whether the omission to enter satisfaction on the judgments of foreclosure had its cause in the consideration that Delassus was

only paying the balance of a debt, and that the mortgaged lot having been sold he was no longer concerned about it. Without pretending that the answers to these suggestions will be decisive of the case, we can not but think that satisfactory answers to them might throw some light upon it. Judge Ryland concurring, the judgment will be reversed, and the cause remanded; Judge Leonard absent.†