JOHN N. COUDREY, Respondent, *vs.* THOMAS E. GILLIAM, Appellant.

1. *Partnership—Dissolution of—Partner trustee, how far—Collections by one member after dissolution—Statute of limitations, when begin to operate in reference to accounts, etc.*—1. Partners *inter sese* are trustees as to firm property held by them after dissolution, but the trust is implied, not express. Hence, actions between them, relating thereto, are subject to the statute of limitations. 2. The statute does not necessarily begin to run from date of dissolution. Its operation commences with a breach of trust by the partner having partnership property or accounts in charge. And as a general rule the breach takes place after a failure to account and settle within a reasonable time after dissolution, and must be ascertained from the particular circumstances of each case. 3. Where an account has been stated between them at the close of the partnership, the statute, as to the items embraced therein, runs from the time of the statement. 4. Where mutual arrangement, after dissolution, delegates to one member the collection of debts due the firm, no cause of action accrues against him in favor of his co-partner, nor does the statute begin to run, so long as a faithful discharge of that duty postpones a final settlement.

2. *Statute of limitations—Defense of may be raised by demurrer, when—Motion in arrest.*—The defense of the statute of limitations may be made by demurrer when the statement of the plaintiff shows an absolute bar without exception. But where this fact does not appear on the face of the petition the same may be exceedingly defective, and yet, defendant failing to demur, and setting up the statute as a defense—which is traversed by the replication—the defect is not subject to motion in arrest.

*Appeal from Chariton Court of Common Pleas.*

*C. W. Bell, with Chas. Hammond and A. W. Mullins,* for Appellant.

As to accounts between partners, the statute generally begins to run upon the dissolution of the partnership. (Patterson vs. Brown, 6 Mon., [Ky.] 10 ; Bisphan vs. Price, 15 How. [U. S.]. 162, 178 ; Cochran vs. Rogers, 10 Pick., 112 ; Coalter vs. Coalter, 1 Rob. [Va.], 79 ; Sto. Part., 386, note 4 to § 233 ; Didier vs. Davidson, 2 Barb. Ch., 522.)

The cases which hold otherwise are in the main those construing a statute of limitations which expressly excepts from its operation accounts between merchants. These cases under our statute are inapplicable. The case of Massey vs. Tingle, (29 Mo., 437) expressly holds that as between partners the statute may be invoked.

Here the parties closed out their business in the year 1866, and the suit was not commenced until the 6th of June, 1872. There is no evidence that Gilliam ever admitted an indebtedness to Condrey, or ever promised to pay him anything after the year 1866, but, on the contrary, he expressly denied any indebtedness to him. If Gilliam had collected the whole of the note, or more than his interest in it, Condrey might have required Gilliam to have accounted to him, Condrey, for his part of the amount so collected. But this could not open up all the matters connected with the partnership, the amount of capital contributed by each, and the amount withdrawn, etc., in the year 1866.

*Kinley & Kinley*, for Respondent.

I. The petition will support a verdict after trial, on the merits, especially since no objection was raised to it by demurrer.

II. Plaintiff's right of action is not barred by the statute of limitations. (Massey vs. Tingle. 29 Mo., 437.) The rule as to merchants' accounts has nothing to do in this case. This is settlement of partnership alone.

After dissolution each partner becomes, as to the firm assets, tenant in common. (Hogendobler vs. Lyon. 12 Kans., 278; Sto. Part., §§ 322–8.) He also becomes a trustee. (Cranshaw vs. Marsh, 1 Swanst., 506; 11 Ves., 5; Pomeroy vs. Benton, 57 Mo., 531; Colly. Part., § 182; Sto. Eq. Jur., §§ 468, 623; Kelly vs. Greenleaf, 3 Sto. R., 93.) Gilliam and Condrey both owed the firm, and, therefore, as to those amounts, were trustees, and hence, could not invoke the statute of limitations. (Ricord's Adm'r vs. Watkins, 56 Mo., 553; Keeton vs. Keeton's Adm'r, 20 Mo., 530; Kane vs. Bloodgood, 7 Johns., 110.)

Gilliam recognized his fiduciary relation by agreeing from time to time to settle, and led Condrey to suppose he would do so, and is thereby estopped from pleading the statute.

. Napton, Judge, delivered the opinion of the court.

This suit was brought on June 6th, 1872. The facts stated in the petition in this case are, that plaintiff and defendant on the 26th of May, 1865, entered into copartnership in selling merchandise, for one year from the date of the articles, each putting in the concern an equal amount of capital, and agreeing to share the profits and bear the losses equally; that the business was carried on until the 26th of May; 1866, when the said partnership was dissolved by the terms of the articles, and by mutual consent. The petition further states that there were uncollected notes and accounts in plaintiff's possession, amounting to $543.28; that defendant has a note against one Blevins for $66.25; that defendant is indebted to said firm in the sum of $1500, (and an account is filed to show this) and that the plaintiff is indebted to the firm in the sum of $300 (another account is filed to show this). The petition further states that no settlement of the accounts and matters of copartnership has been made between plaintiff and defendant, though plaintiff has repeatedly requested such settlement, but said defendant at all times refused.

The petition further states that there are no debts due and owing by said firm in said business. Plaintiff therefore asks that an accounting be taken of all the late copartnership dealings, and the same be finally settled between him and defendant, and if defendant be found owing plaintiff anything on said settlement, that he be adjudged to pay the same, plaintiff being ready and willing, and hereby offering to pay any sum that on said settlement may be found due and payable from him to defendant. It is further asked that the notes and accounts aforesaid be placed in the possession of some suitable person for collection and distribution, and for all orders &c., that to the court may seem proper.

There were filed with said petition five exhibits, one containing a copy of the articles of copartnership, the second a list of the notes referred to, the third an account with defendant to the firm, running down to Dec. 31st, 1866, with one item on Dec. 1st, 1871, as follows: "Apples of T. Sanders

(on note) $22," fourth, an exhibit of plaintiff's account with the firm, and, lastly, an itemized account referred to in the petition, running down to 1872.

The answer of defendant denies his indebtedness and then states, " that he ought not to be held liable to pay plaintiff on his said supposed cause of action, because he charges and avers that said supposed cause of action arose more than five years before the commencement of this suit."

The record states that the case was submitted to the court on the petition, answer and reply, and the court having heard the testimony and not being sufficiently advised, etc., appointed J. L. Applegate as referee, to examine the books and accounts, and report to the court the state of accounts between the parties. At a subsequent term, the referee reported, and found a balance due plaintiff of $530.78.

This report was approved by the court, and a judgment was given for the sum, with interest, and an order made that the notes and accounts uncollected be sold by the sheriff, and the proceeds divided.

It is necessary to a proper understanding of the only point presented by this case, to state so much of the evidence as pertains to this point, which was entirely confined to the statements of the parties.

Coudrey, the plaintiff, testified, that after the dissolution in May, 1866, the goods left on hand were boxed up and stored until fall, and were then opened and sold at auction or private sale, but not entirely. The remainder left was divided between them. The last sale was December 17th, 1866. " The notes and accounts were not divided. I was to take them and settle up the business. I collected claims and charged them to myself on the books, and when Gilliam got any, charged them to him." Again he says. " In the fall of 1871 Gilliam purchased some apples of T. W. Sanders, and Sanders came to me and said Gilliam told him to have the amount entered on note due by him to Gilliam and Coudrey. I gave him credit accordingly. The last item prior to this charge is dated December, 21st, 1866. The Sanders

credit was entered December 1st, 1871. I told Gilliam about it. All business of the firm, advancement of money, purchase of goods, etc., are contained in the books produced. I had conversation with Gilliam in the fall of 1871, and asked for a settlement. We fixed two weeks from that time. Shortly afterwards Gilliam told me he could not settle then, as it was the week of the Keytesville fair, and we then agreed upon the week after, as I understood him. From the dissolution up to the time of commencing this suit, I collected what I could on the notes and accounts of the firm, and entered the collection on the books of the firm. The books contain all such collections. The last collection was entered June 8th, 1872. It was the agreement made between Mr. Gilliam and myself at the time of the dissolution, that I should take the books, notes, accounts, etc., and settle up the business."

The defendant. Gilliam, testified as follows : " The books were kept by Coudrey. I drew my checks against the cash entries in my memorandum book. Coudrey put the amount down on one side, and I kept the other side. I bought some apples of Sanders, and wanted to pay him, but he said, no ; he owed Gilliam and Coudrey. I came down and saw Coudrey, and the amount was credited. Coudrey furnished me list of notes and accounts ; never furnished me regular balance sheet ; furnished me several little statements I could not understand."

This was all the evidence in the case, and after hearing the evidence the court, as heretofore stated, referred the matter to Applegate, to make out the partnership accounts, and report the result.

The only objection relied on in this court, and indeed the only objection made below on the motion for new trial and in arrest. was that the action was barred by the statute of limitations. five years and upward having elapsed since the dissolution of the partnership. The partnership was dissolved on the 26th of May, 1866, and this action was commenced on the 6th of June, 1872.

It was well observed by Judge Scott, in the case of Rector's Heirs vs. Rector's Adm'r, (20 Mo., 538) "that the application of the statute of limitations, in courts of equity, to matters of trust, is made difficult from the contrariety of opinion which prevails in relation to it. Whilst all admit that an express or direct trust is not subject to be barred by the statute, a difficulty is experienced in determining what trusts fall under the denomination of express or direct trusts, as well as in ascertaining the period of limitations to be applied after the character of the trust is determined."

Hence, the same learned judge said, in the case of Massey vs. Tingle, (29 Mo., 438) "We know no principle which declares that the statute of limitations begins to run against an action to adjust and settle partnership accounts, from the time of its dissolution. When the account, or an item in the account, is barred, must be determined from the facts in relation to it. The application of the statute must be governed by circumstances. Cases may be stated in which an account may be barred in five years, others may be stated in which an account would not be barred in a much longer term."

And after a careful examination of such English and American authorities as were accessible, I have come to the conclusion that these observations of Judge Scott in Massey vs. Tingle, brief as they are, really embrace about all that can be said on the general principles by which courts of equity are guided, and that the application of the statute depends on the facts and circumstances of each case.

The difficulty is in determining when the cause of action accrues, and this depends on the relations the partners bear to each other, and the duties reciprocally arising from the relation. That they occupy a position analogous to that of tenants in common, so far as the property on hand at the dissolution is concerned, and that they are impliedly trustees is conceded by all the authorities; and consequently the trust is of such a nature as the statute of limitations applies to.

But the question still remains, when will the law consider a breach of trust as having occurred, and at what point of time, therefore, will the statute of limitations commence.

Judge Story observes, in his work on Partnership, (§ 347) that, "as it becomes the duty of all parties in interest, upon a dissolution by death (or otherwise) with all practicable diligence, to wind up and settle the partnership concerns, to pay the partnership debts and obligations, and to distribute the surplus among those who are entitled to it, according to their respective shares therein, each party in interest has a right, in case of any improper delay, or danger of loss, or neglect of duty, to require the aid of a court of equity to enforce the duty and to compel a full account and settlement of the whole concern * * * and if within a reasonable time, the survivors do not account with them, and come to a settlement, a court of equity will entertain a bill for this purpose, and will, in aid thereof, if necessary, restrain the partners by injunction, from disposing of the joint property and from collecting the outstanding debts. So the surviving partners have each against the other a like right to insist upon a final adjustment and settlement of the partnership accounts and a distribution of the surplus."

Judge Story had previously remarked in section 325, that "notwithstanding the dissolution of the partnership, there still remain certain rights, duties, powers, authorities and relations between them, which the law recognizes and supports, because they are or may be indispensable to the complete arrangement and final adjustment of the affairs of the partnership; and therefore, in a qualified and limited sense, the partnership may be said for those purposes to continue between the parties, until such arrangement and settlement takes place. Indeed, as has been well said by a learned author on that subject, "From the very nature of the partnership, engagements may be contracted, which cannot be fulfilled during its existence, exposed as it is to sudden and arbitrary terminations, and the consequence, therefore, must be, that for the purpose of making good outstanding engagements, of taking and settling all the accounts, and converting all the property, means and assets of the partnership, existing at the time of the dissolution, as beneficially as may be,

for the benefit of all who were partners, according to their respective shares and proportions, the legal interest must subsist, although for all other purposes the partnership is actually determined."

"Hence," Judge Story further says, (§ 328) "it is now the admitted doctrine of the common law, that although the dissolution of the partnership disables any one of the partners from contracting new debts, or buying or selling or pledging goods on account of the firm, yet, nevertheless, it leaves every partner in possession of the full power (unless, indeed, upon the dissolution it has been exclusively confided and delegated to some other partner or person) to pay and collect debts due to the partnership, to apply the partnership funds and effects to the discharge of their own debts, to adjust and settle the unliquidated debts of the partnership, to receive any property belonging to the partnership, and to make due acquittances, discharges, receipts and acknowledgments of their acts in the premises. For all these acts, if done *bona fide*, are for the advancement and consummation of the great objects and duties of the partners; upon the dissolution, to wind up the whole partnership concern, and to divide the surplus, if any, among them, after all debts and charges are extinguished."

It is apparent from these remarks of Judge Story that the mere dissolution of a partnership does not authorize a bill in equity for an account, when by agreement between the parties after dissolution, one of the partners has been entrusted with the power, belonging to both, of collecting accounts and notes unsettled, and there has been no stated account between them. The partner so confided in, is guilty of no breach of trust in proceeding to collect the debts, and in a suit against him, he could not set up the bar of the statute, or claim that the dissolution had occurred five years before suit brought. Nor on the other hand, do I perceive how the partner who acquiesced in this arrangement can set up the statute as a bar to an account.

Undoubtedly where there has been a stated account between the partners at the close of the partnership, so far as all items

embraced in such account are concerned, neither party can disturb it at law, or in equity, after the limitation allowed by the statute has expired. And this is all that was decided in Bispham vs. Price. (15 How., 178.) Mr. Justice Campbell in that case observed : "But if we could doubt upon the intrinsic equities of the parties, the statute of limitations affords a conclusive answer to the bill. The bill and answer agree that this item of the account was ascertained and stated, and all the liabilities of the firm were practically adjusted by this settlement. The amount of the liability of Bisfilian was credited to him and he received the absolution of Archer from all further claim. The exception in the Pennsylvania statute in favor of merchants' accounts, according to the numerous authorities of the State courts, does not apply to the accounts of partners *inter sese*, though this is not universally admitted. But however the law may be as to open accounts, the settled doctrine of the court is, that the exception in the statute does not apply to stated accounts. (Spring vs. Grey, 6 Pet., 151; Toland vs. Sprague, 12 Pet., 300.")

The principle upon which courts of equity act in applying the statute of limitations to settlements or accounts between partners, is very clearly explained by the Vice Chancellor in Tatam vs. Williams (3 Hare, 357), and is in accordance with the views expressed by Judge Scott in Massey vs. Tingle. That was a case, it is true, in which the surviving partners brought a bill against the executors of a deceased partner, but it matters not whether a dissolution is affected by the death of one of the partners, or by the terms of the partnership, or by mutual consent, so far as this question is concerned.

"The question," says the Vice Chancellor, "how long the estate of a deceased partner continues liable to the demands of surviving partners, is not, I apprehend, the subject of any positive statutory enactment, except so far as this court may found its rules upon analogous cases at law. The cases at law, which appear to have been commonly argued upon in this court, as affording an analogy in questions between partner and partner after a dissolution of partnership, are those which

fall within the exceptions as to merchants' accounts in the statute of limitations. Now, notwithstanding the doubts which appear for a long time to have hung over the construction of that exception in the statute. I understand the rule at law now to be settled, that if all dealings have ceased for more than six years, the statute, even between merchant and merchant, their factors and agents, is a bar to the whole demand, except where the proceeding is an action of account, or perhaps an action on the case for not accounting  *   *  upon the question whether one partner could, at law. maintain an action of account against his copartner, I will refer only to the very elaborate argument of Mr. Hays, in Collam vs. Partridge (4 Man. & G., 278). In this court there is direct and very high authority for the proposition, that a court of equity will not, after six years acquiescence, unexplained by circumstances, or countervailed by acknowledgment, decree an account between a surviving partner and the estate of a deceased partner. (Barber vs. Barber, 18 Ves., 286 ; Ault vs. Goodrich, 4 Rup., 430 ; Bridge vs. Mitchell, Gill. Eq., 224)—a case spoken of by Ld. Eldon in Fowler vs. Hodgson (14 Ves., 185). as a case of authority ; to which may be added the case of Martin vs. Heathcote (2 Eden, 169) and Ld. Henley's note upon that case. The authority of the case of Barber vs. Barber, and consequently the authority of the other cases, is without doubt, much shaken by the observations of Ld. Brougham in moving judgment of the House of Lords in the case of Robertson vs. Alexander (8 Bligh. N. S., 352). For, notwithstanding Ld. Cottenham's remark in Morehouse vs. Scarffle (2 Myl. & Cr., 704), to the effect that the judgment of the House of Lords in any given case does not involve an approbation of all the reasons which each Peer may have given for his vote. so as to make those reasons binding upon courts of inferior jurisdiction, it is impossible not to defer to the opinion to which I have adverted, and perhaps difficult to explain the judgment of the House of Lords upon any other reasons, notwithstanding the special circumstances of that case. But Ld. Brougham in that case, acknowledged in the clearest manner, that

whether by analogy to the statute, or for any reason, six years was or was not a bar in that case, it was the duty of a court of equity to consider whether, under circumstances of delay, a decree should be made. In this case it is unnecessary that I should rely upon the cases which have decided that this court will not give relief after six years of delay, wholly un-accounted for, inasmuch as in this case it was not six years, but a clear period of 13 years which elapsed between the death of Fowler and the filing of the bill, and no excuse is given for that delay."

Now it will be observed that the British statute, making an exception in favor of accounts between merchants, copied in Pennsylvania, Virginia, Kentucky and other States, is not in our statute of limitations. Hence the case of Patterson vs. Brown (6 Mon., 10), and Coalter vs. Coalter (1 Rob. [Va.] 79), are not applicable here. Our act of limitations (2 Wagn. Stat., 918), provides that "in an answer brought to recover a balance due on a mutual open and current account, where there have been reciprocal demands between the parties, the cause of action shall be deemed to have accrued from the time of the last item in the account on the adverse side." In a note to Foster vs. Hodgson (19 Ves., 180), referred to in the Vice Chancellor Shadwell's opinion, it is said that an account, though between merchants, if stated, will be barred by the statute of limitations; but if an account between such par-ties remain open and current, it will be within the exception of the statute; and this distinction between stated and unsta-ted accounts seems well settled, and the only difficulty which has been felt of late years, is whether an account could be con-sidered as a current one, when there has been no dealing be-tween the parties for six years; and it has been held, that it could not be so considered. (Barber vs. Barber, 18 Ves., 286.) Our statute speaks of a mutual open and current account, whether between merchants or other persons, and counts the beginning of the cause of action from the last item in the ac-count on the adverse side.

As in this case, there was really no mutual or current account between the parties, after the dissolution of the partnership, the effect of the entry of the Sanders transactions, in December, 1871, may be passed over, as entitled to no weight in the determination of the main question involved. The plaintiff was, by express arrangement between the parties, entrusted with the notes and accounts, and no memorandum of the business was kept by the defendant.

Considering, however, that the relation between these parties, after the dissolution of the partnership, implied a trust, and that the one entrusted with the collection of the notes and accounts could have been compelled at any reasonable time after such confidence reposed, to account to the other, and that no stated account between them, either temporary or final, was ever made, or any demands for a settlement until 1871, by either party, it is difficult to see how either party could regard the delay or postponement of the settlement as unreasonable. The fulfillment of the trust, in fact, necessarily postponed any final settlement. Moreover, the demand for a settlement in 1871, by the plaintiff, and the agreement of the defendant to meet the plaintiff on a day named, with a view to a final settlement, was a clear admission, not only of the fact that there had previously been no final account between them, but that such account was necessary to a final adjust-. ment of the affairs of the partnership. There was no contradiction between the statements of plaintiff and defendant on this point, nor indeed on any other material point.

The facts are well established. It appears, indeed, that one of the notes, or accounts entrusted to the plaintiff for collection, was not collected until after this suit was brought. There was no breach of trust, on the part of the plaintiff, no unnecessary delay in a settlement, and no opposition to a settlement on the part of defendant until 1871—scarcely a year before this action was brought. There was no ground for a proceeding in court to compel a settlement whilst the mutual understanding and agreement of plaintiff and defendant, upon the dissolution, delegated to the plaintiff the power to collect

the debts due the partnership, and necessarily postponed a final settlement by this arrangement. The application of a general-principle upon which courts of equity act might be different in the case of a dissolution of a partnership by the death of one of the partners, where no waiver or estoppel on the part of the dead partner could be claimed, nor any agreement to a transfer of power to the survivor could occur.

The general rule is that after the lapse of the time fixed by statute, the suit for an account cannot be maintained ; and courts of equity follow this rule and will not allow a bill for a settlement, after a stated account, or where there is no excuse for a settlement, and one of the partners is dead. But in this case the settlement was voluntarily postponed by both parties and there was no ground for an action to compel a settlement until the refusal of the defendant to account in 1871. The statute of limitations was therefore no bar, under the facts and circumstances of the case.

It is insisted here that the petition, on its face, showed no cause of action, and that a demurrer would have been sustained to it; and that, although no demurrer was filed, the court, on the motion in arrest, ought to have decided in favor of defendant.

Under our decisions, the defense of the statute of limitations may be made by demurrer, where the statement of the plaintiff shows an absolute bar without exception (22 Mo., 473); but in this case, no demurrer was filed, but the bar of the statute was pleaded in the answer, and the answer denied by replication, though the replication is not copied in the record. (25 Mo., 182.)

Upon these pleadings, we cannot say that the motion in arrest should have been sustained. The petition was very defective, but there was no demurrer to it.

We therefore affirm the judgment. The other judges concur.