Bender v. Markle.

JOHN C. BENDER, Appellant, v. SAMUEL M. MARKLE, Respondent.

Kansas City Court of Appeals, May 20 and 30, 1889.

1. **Referee** : FINDING OF, IN ACTIONS AT LAW AND SUITS IN EQUITY. In actions at law the finding of a referee is considered as a special verdict and appellate courts will not weigh the evidence for the purpose of overturning it; but in equity cases, where the parties have not a right to a trial by jury, a referee's finding may be reviewed on the evidence taken.

2. **Partnership** : ACTION BETWEEN PARTNERS AFTER DISSOLUTION : EQUITABLE, WHEN.   Notwithstanding there may be a settlement between partners of matters theretofore existing and a dissolution, the partnership still continues in a qualified sense, for the purpose of paying and collecting partnership claims, and adjusting partnership affairs and partnership relations which existed or had their inception prior to the dissolution; and an action by one partner against another for a sum alleged to be due plaintiff on account of partnership matters transpiring since the dissolution is an action of equitable cognizance, and this, too, though there is no prayer for an accounting, as the relief will be granted in accordance with the facts averred and proved.

Bender v. Markle.

3. ———: DISSOLUTION : LIMITATION. It does not follow that the dissolution of a partnership sets the statute of limitation in motion, but as long as there are debts to be paid or credits to be collected, the statute of limitations does not begin to run, as to the account between the partnership and any of its members, and the agency or trusteeship of the several partners would continue so as to prevent the statute from running till it was shown to have been renounced on the one side or not recognized upon the other.

4. Referee : FINDING OF, AS TO LAW AND FACTS : WHAT AND WHEN SET ASIDE. While in law actions the finding of the referee, as to the facts, is a special verdict, yet if his conclusions of law from such facts are erroneous, such conclusions will be set aside.

5. Mortgage or Conditional Sale : INTENTION : MAXIM : DOUBT. Whether a conveyance absolute on its face is a mortgage or a conditional sale is to be ascertained by learning the intention of the parties, and is fixed at its inception and is not changed by lapse of time, the maxim, "once a mortgage, always a mortgage," applying; and, in case of doubt, such doubt should be resolved in favor of the instruments being intended as a mortgage.

6. Mortgage : CREDIT OF PROCEEDS OF IRREGULAR SALE ON NOTE : LIMITATION : AMOUNT OF CREDIT. Where the holder of a conveyance intended as a mortgage sells the property without foreclosure proceedings and credits the proceeds on the note intended to be secured by such conveyance, such credit will operate as a payment made by defendant so as to prevent the bar of the statute of limitations, though the defendant may not be bound by the amount of the sale and will be entitled to a credit equal to the value of the land so irregularly sold.

*On motion for rehearing.*

1. Limitation : PARTIAL PAYMENT : PRIMA FACIE CASE. The holder of a note makes a *prima facie* case against the statute of limitations by merely showing a part payment; and if such payment is made without intending it should operate as an acknowledgment as to the residue, such lack of intent must be evidenced by some act of the payor and should be made to appear by him.

2. ———: PAYMENT, BY WHOM MADE : AGENCY OF MORTGAGEE. Such payment is sufficient to prevent the running of the statute if made by any one authorized to make it, and every mortgagee may be said to have an order from the mortgagor, either in express terms or by 'operation of law, that the proceeds of the sale of the land shall be applied as a payment on the note.

3. ———: REASONABLENESS OF TIME OF SALE. As to whether the ques tion of the reasonableness of the time of the sale of the land by plaintiff might be a proper subject of inquiry, *quaere.*

*Appeal from the Buchanan Circuit Court.*—Hon. O. M. Spencer, Judge.

Reversed and remanded.

*Burr & Robinson,* for the appellant.

(1) The first count in the petition in this case shows an action for an accounting between partners, although the prayer would seem to be in *assumpsit.* The allegations in the pleadings, and not the prayer for relief, determine the nature of the action ; and under our statutes the court may give any relief consistent with the allegations in the pleadings, without regard to what is asked for. *Henderson v. Dickey,* 50 Mo. 161 ; *Wright v. Babb,* 53 Mo. 340 ; *White v. Rush,* 58 Mo. 105 ; *Bank v. Evans,* 51 Mo. 335 ; *Mason v. Black,* 87 Mo. 329. (2) The statute limiting actions on mutual, running and current accounts does not apply as between partners, on a suit in equity for an accounting. *Massey v. Tingle,* 29 Mo. 437 ; *Condrey v. Gilliam,* 60 Mo. 86 ; *Tutt v. Cloney,* 62 Mo. 116–121 ; *Alexander v. Clark,* 83 Mo. 481 ; *Mudd v. Bast,* 34 Mo. 465–468 ; *Hammond v. Hammond,* 20 Ga. 556. (3) On mutual, open and current accounts, generally, the statute only begins to run at the date of the last adverse charge. R. S. 1879, sec. 3233. (4) In equity proceedings the appellate court will review the findings of the referee where the evidence is embodied in the record. *Prendergast v. Eyermann,* 16 Mo. App. 387 ; *Ely v. Ownby,* 59 Mo. 437–441 ; *O'Neill v. Capelle,* 62 Mo. 202 ; *Donovan v. Barnett,* 27 Mo. App. 460 ; *Hardware Co. v. Walter,* 91 Mo. 484. (5) In actions at law the conclusions of law arrived at by the referee, as to facts found, may, if erroneous, be set aside and the law properly applied by the appellate court. *Goetz v. Piel,* 26

Mo. App. 634.   (6) The land given as security in this ·
case is in the nature of a collateral security, and the
application by the creditor of the proceeds of a collate-
ral security, deposited by the debtor, will operate like
a payment by the debtor to remove the bar of the
statute of limitations against the principal debt. *Storn-*
*berger v. Lee,* 45 Am. Rep. ( Neb.) 106 ; *Haven v. Hath-*
*away,* 20 Me. 345 ; *Whipple v. Blackington,* 97 Mass.
476 ; 3 Ran. Com. Paper, sec. 1623 ; *Joliet I. Co. v.*
*Scioto F. B. Co.,* 25 Am. Rep. ( Ill.) 341 ; *Wheeler v.*
*Newbould,* 16 N. Y. 392.

*Woodson & Woodson,* for the respondent.

(1) The first count in the petition is an action of
*assumpsit,* based upon the theory that there was an
absolute dissolution of the partnership and settlement
in August, 1871, and that all debts contracted after that
were individual matters.   Having tried the case upon
that theory below, he cannot abandon it, and proceed
upon a different theory in this court.   *Nance v. Metcalf,*
19 Mo. App. 183; *Schlicker v. Gordon,* 19 Mo. App. 479;
*Corn v. Cameron,* 19 Mo. App. 573; *Wright v. Sander-*
*son,* 20 Mo. App. 534; *Armstrong v. Bank,* 62 Mo. 59.
(2) Even if this was an action for an acccounting, where
the defendant denies the fact of co-partnership, if the
demands are such that they might be prosecuted in
actions for "money had and received," and "account
stated," a referee is improper, as the issue is one for the
jury.   According to this rule, this case was not refer-
able, except by agreement of the parties, which was
done.  *Silver v. Railroad,* 5 Mo. App. 381; s. c., 72 Mo.
194.   (3) When the partners themselves have cast up
the items, and agreed upon the state of the account and
the resulting balance either way, there is no further
account to be taken, unless upon a suggestion of fraud,
mistake, or omission operating to falsify their conclu-
sions; and the court cannot interfere with the result

thus settled by the parties. *Silver v. Railroad*, 72 Mo. 194; s. c., 5 Mo. App. 381. (4) If one partner collect a portion of the claims due the firm, and fail to account for the amount so collected in the partnership settlement, he may be sued by the other partner without any impeachment of the settlement or re-adjustment of the partnership accounts. Partners are not forbidden to sue each other at law, merely because they have been partners, but only when the adjustment of the matter in controversy involves the investigation and settlement of the partnership accounts. *Russell v. Grimes*, 46 Mo. 410. (5) But conceding that this is, as appellant contends, "an action for an accounting between partners," and that it is not barred by the statute of limitations, yet the judgment must be affirmed as to the first count, because the referee found for the defendant, because "plaintiff has failed to establish the allegations in said count." The report of the referee is conclusive as to questions of fact, if there is any evidence to support it. *Gamble v. Gibson*, 75 Mo. 326; *Father Mathew v. Fitzwilliams*, 84 Mo. 406; s. c., 12 Mo. App. 445. (6) Even in equitable proceedings, this court will defer somewhat to the trial court in matters of fact, "when the advantages of the latter are so great in regard to observing the manner and demeanor of the witnesses," etc. *Bartlett v. Newfried*, 94 Mo. 529 and 530, and cases cited. (7) The second count in the petition is unquestionably an action at law, and the referee found for defendant thereon, "because plaintiff failed to show any authority to make the credit on the back of the note. The finding of the referee on this point is conclusive upon this court. *Gamble v. Gibson*, 75 Mo. 326; *Father Mathew v. Fitzwilliams*, 84 Mo. 406; s. c., 12 Mo. App. 445. (8) The evidence shows, and the referee found, that when Markle executed the note to plaintiff, he intended to secure the same, until the note matured, by giving an equitable lien only upon his interest in the Peter Bender farm, and, if not paid at maturity, then Dr. Richardson under

the agreement, who held the legal title to the land, was to convey the absolute title thereof to Bender, in payment and satisfaction of said note. This constituted the whole transaction, conditional sale, which became absolute when Markle failed to pay the money when due, and the conveyance was made to Bender. *Turner v. Kerr*, 44 Mo. 429; 2 Delvin on Deeds, secs. 1119, 1120, and cases cited; 1 Jones, Mortgages [3 Ed.] secs. 269, 270. After this no debt existed. *Stowey v. McMurray*, 27 Mo. 113; 2 Delvin on Deeds, secs. 1119, 1120, and cases cited; 1 Jones, Mortgages, secs. 269, 270. (9) But, admitting that the transaction and intention of the parties was to create a mortgage upon the land to secure the note, Bender being the mortgagee, he had no right under the contract, or independent of it, to sell the land at private sale, and apply the proceeds, or any part thereof, upon the note. Appellant does not contend that there is anything in the contract that authorizes him to do so. And even if it had so provided, that part of the contract would have been void, because the mortgagor can never contract away his "equity of redemption," and the only way in this world, by which the mortgagee can get shut off that "equity of redemption," sell the land and apply the proceeds thereof in satisfaction of the note, is by a "suit of foreclosure." (10) All the cases, cited by appellant in his argument, are cases where there was a dissolution of the partnership only, and not a dissolution and settlement as is the fact in this case. Besides this, Bender's account shows no such items; he must recover upon his petition, if at all, and not upon the answer of defendant. *Perry v. Barret*, 18 Mo. 140; *Magruder v. Adams*, 4 Mo. App. 133; *Gurly v. Railroad*, 93 Mo. 450.

ELLISON, J.—Plaintiff and defendant were formerly partners engaged in prosecuting and collecting claims against the United States and dealing in real estate. They dissolved in 1871, after a settlement of affairs up

to that time.    The first count in this action is for a sum alleged to be due plaintiff on account of matters tran- spiring since the dissolution.

The second count is on a note executed by defendant to plaintiff, January 11, 1873, for four hundred dollars, and on which plaintiff entered a credit, July 1, 1878, on account of sale of land, which he held under a deed which defendant directed made to him.

The answer was a general denial and the statute of limitations as to both counts.  The matter was referred to a referee, whose finding was that the statute of limitations barred the action in both counts, and that on the first count plaintiff failed to establish the allegations of the petition.,  The report and finding was approved by the court below and plaintiff has brought the case here.

It is important to determine whether the first count is an action at law or in equity.  Defendant says it is an ordinary action *in assumpsit*, while plaintiff claims it to be in equity for an accounting.  If an action be at law, in which the parties have a right to a jury, the finding of the referee, to whom the matter is referred by agreement of parties, will be considered as a special verdict, and appellate courts will not weigh the evidence for the purpose of overturning his finding.  But if it be an equity case, the parties have not a right to a trial by jury, and, if in such case the court refers the case to a referee, his finding may be reviewed on the evidence taken.

The parties agree as to the formation and object of the partnership and as to a dissolution and settlement in 1871, in which there was a balance found to be due plaintiff of $88.45.  There was then pending and undetermined a large number of claims in which they were entitled to fees, and in the prosecution of which expenditures would be required.  It was agreed that plaintiff should continue in business, prosecute the claims on hand, collect and receive the fees therefor, and keep an account of the receipts and disbursements, and of all

moneys paid to defendant on account of said business, and also pay a certain note of seventy-five dollars, which defendant owed to the bank, and, as plaintiff alleges, repay himself for all such disbursements out of the fees to be collected and land to be disposed of, and if there was not enough realized therefrom defendant was to pay the balance due to plaintiff. Plaintiff was to charge nothing for his services in closing up the partnership business. Under this arrangement plaintiff says he received on fees and land sold $972.97, and paid out $1,330.52, leaving a balance due to him of $358. A large number of suits were pending against the firm at the time of the dissolution of the partnership, or were brought soon thereafter, in and about the defense of which plaintiff says he paid out for attorney's fees and other costs large sums of money, and that he collected certain claims or fees for the firm during all the years from 1871, up to July, 1885, and many of such claims and fees still remain uncollected and no settlement was ever had between them as to any of the business transacted by plaintiff after the dissolution of the partnership, in August, 1871. The plaintiff, acting for and on behalf of the partnership, or partners, in receiving and disbursing the moneys, claims not only to be a trustee of the firm, but that his transactions constituted a mutual, running and current account between them as to such receipts and expenditures on account of the partnership business, and that either partner could compel a settlement or accounting as to such unsettled business.

Defendant contends that the settlement was a full and final settlement of all the partnership affairs, past or prospective, and that there was no further partnership relation between them.

I am of the opinion that the first count must be regarded as an action in equity; there is no prayer for an accounting, but the body of the petition discloses that the action is for an adjustment of accounts between

partners in relation to partnership matters which have arisen since the dissolution. It is well settled in this state that relief will be granted in accordance with the facts stated, regardless of what the prayer may be.

When properly understood, the testimony of each of the contending parties makes the first count a matter of equitable cognizance. It shows differences in regard to partnership affairs which require an accounting to adjust; this is the province of a court of equity. *Biddle v. Ramsey*, 52 Mo. 153. Both parties, it is true, agree, that in 1871 there was a dissolution, but, so they agree, that at that time there was a mass of undetermined partnership business, consisting of claims and fees uncollected, partnership interests in lands unsold, and a large number of suits pending against the partnership. Plaintiff, by the terms of their settlement, was to attend to these matters and necessarily should have kept an account which he could render to defendant.

Notwithstanding there may be a settlement between partners of matters theretofore existing and a dissolution, the partnership still continues in a qualified sense, for the purpose of paying and collecting partnership claims and adjusting partnership affairs and partnership relations which existed, or had their inception prior to the dissolution. Story on Part., sec. 325; *Condrey v. Gilliam*, 60 Mo. 86; *Mudd v. Bast*, 34 Mo. 465. It is not only in the power of a partner, after dissolution, to adjust such matters, but it is his duty to do so.

Regarding this case, then, as one in equity, we do not feel concluded by the finding of the referee, and are not fully satisfied with his findings as to plaintiff's claim, and as the cause is to be remanded for other reasons, we suggest, as was done in a similar case (*Carr v. Moss*, 87 Mo. 447), that the matter be re-examined.

The circumstances of the case, as developed by the testimony, do not justify the referee in finding the

action in this count barred by the statute of limitations. I have already stated the duties devolving upon the former members of a dissolved partnership, and whether those duties were, by an arrangement between the parties, devolved upon the plaintiff alone can make no difference. The trustee relationship is shown to have been recognized by defendant at least, as late as June, 1886, as is shown by his letter of that date, viz. :

"JONESBOROUGH, Ark., June 5, 1886.

" *Mr. Bender* :—

"MY DEAR FRIEND :—I have been intending to ask you to look on our old books and make a list of the partnership claims that have been paid since I went out of the firm. They must be mostly paid by this time. Do this at your leisure so that we can make a settlement sometime this summer.

"Ever yours,

"[Signed] S. M. MARKLE."

It does not follow that a dissolution of a partnership sets the statute of limitations in motion. Duties pertaining to the partnership, as we have seen, may yet remain to be performed, and whether an account is barred will depend upon the circumstances of each case. *Massey v. Tingle*, 29 Mo. 437. The arrangement between these parties in regard to their past partnership affairs were such, that so long as plaintiff was fulfilling those duties by executing the trust reposed in him, he certainly would not have been permitted to have interposed the statute, had he been sued by defendant for an accounting. So, whatever right may have existed in either of them to call the other to an account during the currency of the time since the dissolution, it is certain they each acquiesced in the delay, and that neither can now 'invoke the protection of statute.' *Condrey v. Gilliam*, 60 Mo. 86.

The following extract from the case of *Hammond v. Hammond*, 20 Georgia, 556, is quite applicable to this

case, and I am inclined to approve of all that is there said, with this additional remark, by way of qualification, that the agency or trusteeship would continue so as to prevent the statute from running till it was shown to have been renounced upon the one side, or not recognized upon the other. The court said:

"Each member of a partnership is its agent to do all of its business. A part of the business of every partnership is the payment of its debts and the collection of its credits. As long, therefore, as there are debts of a partnership to be paid or credits of it to be collected, there is a business of the partnership remaining to be done. There may be debts and credits of a partnership existing after a dissolution of it; and, as long as there is any business of a partnership remaining to be done, the agency of each partner, being, as it is, an agency to do the whole partnership business, continues.

" But, as long as an agency lasts, the statute of limitations does not begin to run, as to the matters of the agency between the principal and the agent; therefore, as long as there are debts of a partnership to be paid, or credits of it to be collected, the statute of limitations does not begin to run, as to the account between the partnership and any of its members.

"And when the statute does not run as to the account between the partnership and the members, it does not run as to the account between one partner and the other; for, in reality, that account is between, not one partner and the other, but between the partners and the partnership. He owes the partnership so much, the partnership owes him so much—not he owes the partners so much, the other partners owe him so much. His suit is against the partnership."

II. The second count is an action at law, and in such case, as I have stated, we will look upon the finding of facts by the referee as a special verdict; but, nevertheless, if the referee's conclusion of law from such

facts is erroneous, such conclusion will be set aside; *Goetz v. Piel*, 26 Mo. App. 634. We shall therefore feel bound by the conclusion of the referee wherein he finds that defendant did not expressly agree that plaintiff should sell the land and enter the proceeds as a credit on the note. But as to whether plaintiff had that authority by reason of the relations existing between them by virtue of the deed, we will determine for ourselves.

The transfer of the land through Richardson from defendant to plaintiff was either a conditional sale or a mortgage. Defendant says it was a conditional sale, to become absolute, if the debt was not paid at maturity and thereby extinguish the debt. The facts fail to justify this contention. In the first place there was, as the note establishes, the undisputed relation of debtor and creditor between the parties.

If this relation continued, the transfer of the land must be regarded as a mortgage and not a sale, as, of course, a sale with the debt as a consideration would have extinguished the debt. In this connection it may be stated as a circumstance, that plaintiff has retained the note without objection from defendant.

At about the time of the execution of the note defendant gave to plaintiff the following letter addressed to the party in whom the title to the land was, viz. :

"ST. JOSEPH, Mo., Jan. 10, 1873.
" *Dr. R. P. Richardson, St. Jo., Mo.*

" DEAR SIR :—I have borrowed four hundred dollars from J. C. Bender, due one month after date, if not paid when due please deed my interest in the Peter Bender homestead to John W. Bender or Ella Bender as he may direct, being the land in Holt county, Mo., described as follows: West half ( W. 1-2 ) of southwest quarter of section ten (10), in township (61) of range (39).
" ( Signed ) S. M. MARKLE. "

Defendant testified that he and plaintiff agreed that if he paid the note within a certain time ( he thinks

three or four months ), plaintiff was to convey back to him. It is apparent that the transfer, at the start, was treated as a security for a debt. The character of such transaction is ascertained by learning the intention of the parties, and is fixed at its inception and is not changed by lapse of time. 1 Jones, Mortg., secs. 258, 263. This is but a recognition of the maxim : "Once a mortgage, always a mortgage."

But if we should concede so much as to say the matter was left in doubt, such doubt would be resolved in favor of the instrument being intended as a mortgage. *Ib.*, sec. 279 ; *Turner v. Kerr*, 44 Mo. 429.

Regarding the deed, then, as a mortgage, though absolute in form, we would have no trouble in holding that if there had been a regular foreclosure, plaintiff would have had the right to place the proceeds of such sale on the note as a credit; and such would necessarily be held to have been the original intention of the defendant when he executed the note and ordered the deed. But as plaintiff has sold the land at private sale without authority, it is quite difficult to say what effect such sale and the entry of the proceeds on the note has by way of interrupting the run of the statute.

The deed was given with the intention on the part of the mortgagor, that any proceeds arising from the land should reduce, *pro tanto*, the note. If the mortgagee gets possession, the rents and profits of the premises go to the liquidation of the note, as such must necessarily have been the intention of the parties.

So if the plaintiff in this case had had possession of the property before sale, unquestionably he would have had the right, and it would, moreover, have been his duty to apply the profits of such possession as a credit on the indebtedness. And when in addition to these considerations we reflect that though the defendant is bound by the sale, if made to a party ignorant of the real character of plaintiff's deed, he is not bound, as between him and plaintiff, as to the amount of the sale, and that he is

entitled to a credit equal to the value of the land thus irregularly sold (1 Jones, Mortg., sec. 341), and that therefore he cannot be harmed by the mode of sale, we are inclined to hold that the credit will operate as a payment made by defendant so as to prevent the bar of the statute.

It follows that the judgment should be reversed and the cause remanded. All concur.

ON MOTION FOR REHEARING.

ELLISON, J.—The case of *Worley v. Dryden*, 57 Mo. 226, cited in the motion for rehearing, has no application. In this case, both parties agree that the deed was not to be considered an absolute deed. Defendant testified that he valued the land at more than the amount of the note. And he says, "I agreed with Bender that if I paid this four hundred dollars within a certain time, I think three or four months, he was to *redeed* it to me; if not he was to keep the land." On cross-examination defendant further said, "I drew an order on Richardson to transfer the land to Bender at the same time that I gave the note. I had the privilege of *redeeming* at a certain time." "I deeded the land absolutely, but *reserved the right to redeem*. I knew he had the note but never took it up or demanded it of him. It was his land after a certain time ran out. I had the right for a certain time to pay the note and redeem the land." See *Wilson v. Drumrite*, 21 Mo. 325.

The dispute between the parties at the trial was whether the deed was a mortgage or conditional sale; when such is the question, the doubt is resolved in favor of its being a mortgage. Authorities in original opinion.

There is no question but that part payment of a note takes it out of the statute, that is, the limitation will only begin to run from the day of payment. This is true, if the payment made by the party sought to be

held, whether it be made before or after the note is barred. *Shannon v. Austin*, 67 Mo. 485. From the mere fact of payment of a part of the debt, nothing more appearing, the law presumes an acknowledgment or new promise.

In this state the holder makes a *prima facie* case by merely showing a part payment without going further.

If the partial payment is made without intending it should operate as an acknowledgment as to the residue, such lack of intent must be evidenced by some act of the payor and should be made to appear by him. Notwithstanding the statute requires a new promise to be evidenced by a writing signed by the party sought to be charged (secs. 3248, 3249); yet section 3250 declares that nothing in said sections shall in any manner alter the effect of "a payment of any principal or interest made any person."

So it is held that the payment by one of two joint obligors, made before the obligation is barred, will take the case out of the statute as to both. *Craig v. Callaway Co.*, 12 Mo. 94. The payment of interest by one of several promisors is held to be an acknowledgment as to all. *Callaway v. Johnson*, 51 Mo. 31. And, if the payment be made by a co-maker before the bar attaches, it will take the case out of the statute as to both. *Bennett v. McCause*, 65 Mo. 194. If made by one partner, though after dissolution, it will take the case out of the statute as to the co-partner. *McClurg v. Howard*, 45 Mo. 365. So, if the payment be made by the administrator of one of the joint promisors it keeps the debt alive as to all. *County of Vernon v. Stewart*, 64 Mo. 408.

These cases are cited to show that it is not necessary that the party sought to be held should himself make the payment, and that if it is made "by any person authorized to make it," it is sufficient. *Bennett v.*

*McCause, supra.* Whatever may be the view in other jurisdictions, we must follow the rule as laid down in this state to its logical and natural end.

As before stated, if payment is made, nothing appearing to show a contrary intention, the payment alone is sufficient to prevent the statute barring the claim.

Payment of a portion of an ascertained debt is an admission that the whole is then due. *Haven v. Hathaway,* 20 Maine, 345; 97 Mass. 476. It is equally clear that a party need not pay by his own hand, he may do so by his agent. *Ib.* And this agent may be the payee himself, as where the payor gives the payee collateral.

It was so where goods were given to the payee to be sold and the proceeds applied on the note. *Potter v. Blood,* 5 Pick. 94. And where another note was delivered to the payee to collect and apply the proceeds. *Somberger v. Lee,* 14 Neb. 198; *Haven v. Hathaway, supra;* 97 Mass. 476. When an ordinary mortgage or deed of trust is made to secure the payment of the mortgagor's promissory note, I am wholly unable to see why the proceeds of a sale under such mortgage is not a payment on the note. Now, by whom is the payment made? Certainly it is not made by an intruding stranger. It is made by the mortgagor's agent who acts in obedience to the instruction which his principal has given him in the mortgage. Every mortgagee may be said to have an order from the mortgagor, either in express terms or by operation of law, that the proceeds of the sale of the land shall be applied as a payment on the note. A payment thus made is not an involuntary payment. It is a payment in obedience to the direction of the payor, voluntarily given when he executed the mortgage. Just as much the voluntary act of the payor as when he assigns other notes as collateral with directions to apply the proceeds on the principal note.

We mean our remarks to apply only to a case where the agent ( the mortgagee or trustee ) has made the payment on a note not yet barred, for such agent's authority to acknowledge an obligation already dead might present a different question.

As stated in the original opinion our chief difficulty has been over the manner of the sale of the property, but the conclusion we reached is the opinion we entertain, as the result to be deduced from the authorities in this state.

While we do not wish to be understood as standing committed in the matter, we will suggest in view of a retrial of the cause, that a question of the reasonableness of the time of the sale of the land by plaintiff might be a proper subject of inquiry. See *Potter v. Blood*, 5 Pick. 94.

The motion for rehearing is overruled.    All concur.