T. A. HARRIS, Respondent, v. J. M. ODEAL, Executor, Appellant.

Kansas City Court of Appeals, February 17, 1890.

1. **Partnership**: DISSOLUTION : PARTIAL PAYMENT BY PARTNER : LIMITATION. After the dissolution of a partnership, each partner is clothed with power to make partial payments upon the partnership obligations at any time before they are discharged by the statute of limitations, and thus arrest the running of the statute as to all the partners; but, while he may thus extend the life of a living obligation, he may not breathe new life into one that is dead, except as against himself. So the collection, within the life of a note, by the creditor and crediting from time to time, as collected on the partnership note due him, of partnership accounts placed by one of the partners, after dissolution, in his hands, to collect and apply on the note, stops the running of the statute.

2. **Limitation**: PARTIAL PAYMENTS VS. NEW PROMISES. The opinion notes the marked distinction, made by the statute, between the results of new promises, or acknowledgments, on the one hand, and partial payments, on the other.

*Appeal from the Vernon Circuit Court.*—HON. D. P. STRATTON, Judge.

AFFIRMED.

*Buler & Timmonds*, for the appellant.

(1) The theory, upon which part payment is permitted to have the effect of taking a debt out of the statute of limitations, is that it is a recognition by the debtor of the continued existence of the debt, and of its obligatory character. *Beck v. Haas*, 31 Mo. App. 183; *Leach v. Asher*, 20 Mo. App. 656; *Blair v. Lynch*, 11 N. E. Rep. 949; Wood on Lim. of Action, sec. 104; *Smith's Adm'r v. Irwin*, 37 Mo. 169. (2) The evidence and the facts, as agreed upon in open court during the

trial, show that as against the defendant, in this action, at least, the credits were nothing more than voluntary credits, made without the knowledge or authority of Engart, and upon an understanding between Hickman and Harris, which was no part of the original contract (note) and must, therefore, be ineffectual as evidences of part payment. Wherefore they should not have been permitted to go to the jury at all. *Roseboom v. Billington*, 17 Johns. 182; *Waterman v. Burbank*, 8 Metc. 352; *McCullough v. Henderson*, 24 Miss. 92. (3) The credit must be the result of an act or agreement at the time by the party claimed to have made it, resulting in the debtor parting with something of value, and its acceptance and credit accordingly by the creditor. The running of the statute may have been stopped at the time of the delivery of the notes which were to be collected and applied, but not otherwise. *Irving v. Veitch*, 3 M. & W. 90; *Brandram v. Wharton*, 1 B. & A. 463; *Turney v. Dodwell*, 3 E. & B. 136; *Gowan v. Foster*, 3 B. & Ad. 227; *Harper v. Fairly*, 53 N. Y. 442; *Smith v. Ryan*, 39 N. Y. Sup. Ct. 489; *Smith's Adm'r v. Irving*, 37 Mo. 175; *McCluey v. Howard*, 45 Mo. 368; *Leach v. Asher*, 20 Mo. App. 656; *Lyon v. Bank*, 12 Ala. 508; Wood on Lim. of Action, sec. 104. (4) To give the application of amounts collected by Harris on the notes turned over to him the effect of part payments, so as to prevent the statute from running from the time of such collections, would be going further than any Missouri case has gone. This the appellate courts of this state have repeatedly declared they will not do.

*Thurman & Wray* and *Walker & Johnston*, for the respondent.

(1) The claim was not barred by the statute of limitations. After the dissolution of the partnership,

all the members were jointly and severally liable, and a payment on the note, by either of them, extended the operation of the statute as to all. R. S. 1879, sec. 3250; *Craig v. Callaway Co. Court*, 12 Mo. 94; *Lawrence Co. v. Dunkle*, 35 Mo. 395; *McCluey v. Howard*, 45 Mo. 365; *Block v. Dorman*, 51 Mo. 31; *County of Vernon v. Stewart*, 64 Mo. 408; *Bennett v. McCanse*, 65 Mo. 194; *Zervis v. Unnerstall*, 29 Mo. App. 474. The real contest in this case is over the action of the court in giving the first instruction on behalf of plaintiff. Harris collected the notes and accounts sent him by John E. Hickman, and endorsed the amounts as payments on the note of the dates of the collections. We maintain that the court properly declared the law in this instruction. In the consideration of this question, the distinction between partial payments and acknowledgments must be recognized. "The legislature intended to make, and did make, a marked distinction between the attendant results of promises and acknowledgments on the one hand, and partial payments on the other." *County of Vernon v. Stewart*, 64 Mo. 408; *Craig v. Callaway Co. Court*, 12 Mo. 94; *Appleton v. Kennon*, 19 Mo. 637; *Leabo v. Goode*, 67 Mo. 126; *Wiles v. Robinson*, 80 Mo. 47; *Commiskey v. McPike*, 20 Mo. App. 82; *Haven v. Hathaway*, 2 App. (Me.) 345; *Whipple v. Blackington*, 97 Mass. 476; *Beck v. Haas*, 31 Mo. App. 180.

SMITH, P. J.—The plaintiff presented to the probate court of Barton county, for allowance and classification against the estate of the defendant's testator, a promissory note executed by Engart, Hickman & Co., a firm composed of Abram Engart, the testator, John E. Hickman and Jonathan Hunt—dated May 24, 1867—for the sum of one hundred and eighty dollars, payable one day after date, with interest at the rate of ten per cent. Upon the note were the following endorsements

Received on the within note, July 16, 1868, $17.32; September 3, 1868, $8.20; May 20, 1871, one hundred dollars; February 1, 1874, thirty-eight dollars; April 10, 1876, twenty dollars; March 17, 1877, seventeen dollars; September 20, 1882, thirty-five dollars.

The case was taken by appeal to the circuit court, from whence it was removed to the circuit court of Vernon county, where there was a trial, at which there was evidence introduced tending to show the firm of Engart, Hickman & Co., the makers of said note, were, at the date thereof, merchants doing business at Pisgah, Cooper county, in this state; that the note was given the plaintiff for borrowed money used by said firm in its business; that the firm was dissolved in the spring of 1868, leaving the said note unpaid; that in 1873 or 1874 Hickman delivered to one Hickox, an agent of plaintiff, some notes due the late firm on persons residing in Cooper county, with directions that the same be collected by plaintiff, and the proceeds thereof applied to the payment of the note in controversy. There was further evidence tending to show that Hickox delivered the Cooper county notes to plaintiff in the year 1873, with the instructions that had been given by Hickman. It was admitted that all the payments endorsed on the note by the plaintiff were the proceeds arising from the collection of the notes sent by Hickman, through Hickox, to plaintiff. There were a number of instructions given and refused which will be referred to hereafter. The judgment was for the plaintiff, to reverse which the defendant appealed.

I. The vital question, which arises in the record before us, and which we must decide, is whether a payment made by a member of a copartnership, after dissolution, on a copartnership note, during the statutory life, can have the effect to arrest the operation of the statute at that point as to the other partners. The solution of this question necessarily requires an inquiry

into the extent of the powers and duties of the partners after dissolution. Judge STORY observes, in his work on partnerships (section 328), that "it is now the admitted doctrine of the common law, that although the dissolution of the partnership disables any one of the partners from contracting new debts * * * yet, nevertheless, it leaves every partner in possession of full power * * * to pay, and collect debts, due to the partnership, to apply the partnership funds and effects to the discharge of their own debts," etc., and he further says (section 325) that in a qualified and limited sense the partnership may be said, for those purposes, to continue between the parties until the final adjustment of the affairs of the partnership. And this statement of the law has been greeted approvingly by the appellate courts of this state. *Condroy v. Gilliam*, 60 Mo. 86; *Mudd v. Best*, 34 Mo. 465; *Bender v. Markle*, 37 Mo. App. 234. This is the groundwork of principle upon which most of the cases like the present have been decided.

In *Craig v. Callaway County Court*, 12 Mo. 60, it is said that, "Although there is no authority in a partner to revive debt after dissolution, yet there is both a legal and moral obligation resting on the debtor to pay his debt, before it is barred by the statute. In the one case a man acts voluntarily and without authority; in the other, under obligation, and does what he has promised to do and for the performance of which his security is liable." And to the same effect is the later case of *McCluey v. Howard*, 45 Mo. 365. In *County of Vernon v. Stewart*, 64 Mo. 408, it was again expressly held that although the partnership was dissolved, yet a partial payment, before the statute had run, by one of the partners, would take the case out of the statute as to the other. *Burnett v. McCanse*, 65 Mo. 194, is in line with the other cases just cited.

It would seem that *Leach v. Asher*, 20 Mo. App. 660, is in conflict with the foregoing decisions, but that case, as will be · seen, by the later case of *Zervis v. Unnerstall*, 29 Mo. App. 474, so far as it was not in harmony with the decisions of the supreme court, was intended to only reflect the individual opinion of the learned judge who wrote it.

The statute, after treating of new promises and acknowledgments in writing, and the effect to be given to them, expressly provides that "nothing contained in the two preceding sections shall alter, take away or lessen the effect of a payment of principal, or interest, by any person," thus clearly showing the legislature intended to make a marked distinction between the attendant results of promises or acknowledgments, on the one hand, and partial payments on the other. 64 Mo., *supra.* A co-obligor has no power to revive, as against the others, an obligation already discharged. 45 Mo., *supra.*

Thus it is seen, upon principle and authority, a partner, after dissolution, may extend the life of living obligation of the partnership as to his copartners, but may not breathe a new life into one that is dead, except as against himself, for the reason, that in the one case his action is within, and in the other without, the scope of his implied power.

We think these principles must apply to, and dominate, this case. Hickman, after the dissolution of the partnership of Engart, Hickman & Co., was clothed with power to make partial payments on the said obligation of the partnership, held by plaintiff, at any time before it was discharged by the statute of limitations, and thus arrest the running of the statute as to all the parties. If ten years had not elapsed between the maturity of the note, and the first partial payment, or between any of the payments, or between the last payment and the time of the commencement of the action,

the bar of the statute never attached.   Under the ample powers with which the partners of a firm are invested, by law, after dissolution, it is too plain for argument that Hickman was authorized to apply the proceeds of said partnership notes to the payment of the note sued on as fast as collected.   There is no pretense that this was not done in the utmost good faith by the plaintiff, under the instructions given to him for that purpose by Hickman.

The instructions given by the court for the plaintiff are, and those refused for defendant are not, in accord with the views herein expressed, and, therefore, the action of the trial court in that regard cannot be assailed.   It results that the question stated in the outset must be answered in the affirmative.   Judgment of the circuit court will be affirmed.   All concur.