Bissell, J.
On the 5th of May, 1888, the defendant in error, Rowland, jointly with The Black Cloud Mill Company, executed his note for $4,870, payable on the 15th of June following at the National State Bank of Boulder. When the note was made Rowland delivered to the bank, as collateral security for its payment, sundry certificates of stock of the Mill Company, and, by a power of attorney, concurrently executed, appointed O. F. A. Greene his agent with power to sell and transfer the collaterals at public or private sale, and apply the proceeds, if any, as a payment on the note. The present action was commenced on the 8th of August, 1890. To avoid the bar of the statute of limitations the plaintiff averred two payments ; one of $989.55, of date August 15,1884 ; and one of $46.66, of date September 5,1884. The defendant took issue on these allegations and pleaded the statute. At the trial it appeared that the payments relied on were made by Greene, the attorney, and by the bank, as follows : under the authority, which has been previously referred to, Greene sold the securities at public sale and indorsed the proceeds, $989.55, on the note ; the other payment of $46.66 was the indorsement by the bank of the moneys which, September 5, 1884, were to Rowland’s credit on the books of the corporation.
Whether the application by Greene, of what was realized on the sale, was a payment which would avoid the bar of the statute in Rowland’s favor, obviously depends upon the *470 agency exercised by Greene, and the legal consequences flowing therefrom. The effect of the indorsement by the bank need not be considered. It can in no sense be regarded as a voluntary payment, which under all the cases is necessary when the implied promise essential to the removal of the bar is to be deduced from the act. The correct solution of the other question is not free from difficulty, when considered with reference to the provisions of the statute, the causes which led to its enactment, and the reasons assigned to take out of its operation a case which has been plainly barred by the lapse of time. Upon authority, however, the case is reasonably clear. It was long ago decided, and the principle has been incorporated into the statutes of this state, that a voluntary payment by the defendant who owes the principal debt, or is bound for it, will stop the running of the statute. The case presents none of the difficulties suggested when the payment is made by a joint obligor, or by a partner after the firm has been dissolved. According to a very distinguished line of authorities, of which Van Keuren v. Parmalee, 2. N. Y. 523 is a leading example, the implied promise will not be held to arise where the payment is made in either of these cases. It is equ’ally true, as is well decided in the case of Shepherd v. Thompson, 122 U. S. 231, if it appears that the promise relied on is a mere acknowledgment that the debt once existed, contained in the power itself, it will be insufficient to remove the bar. According to that eminent authority the simple acknowledgment of the debt would not be enough. The acknowledgment must be accompanied by a promise in some form, “ proven in a clear and explicit manner, and in its terms unequivocal and determinate,” and for such a promise the old debt is a sufficient consideration. The promise which the law implies from a payment rests upon totally different considerations. There is no promise to be proven of which the terms must be unequivocal and determinate, nor is it to be proved in a clear and definite fashion. Under these circumstances the promise to pay is not to be deduced from the language used *471 by the promisor, or contained in his acknowledgment of the debt. Proof of payment is of itself ample to revive or continue the liability, since the legal consequences of a promise definitely attach to the act. It is universally agreed, even in that state where they have gone furthest in the establishment of the doctrine that a payment by a joint obligor will not raise a promise by implication, that the payment from which the promise will be implied need not be made by the principal debtor, but may be made by any one' on his behalf, providing it is done under his authority, or he has ratified it according to the well settled law on that subject. In the First National Bank of Utica v. Ballou, 49 N. Y. 155, it is said,—“ it is not disputed that a payment made by an authorized agent would be effectual to take a case out of the statute. And it is equally clear that Shear-man, though the principal debtor on the notes, might act as such agent. If authorized by the defendant, it was his act, and an unequivocal recognition by him of the existence of the debt. It is only by reason of their effect as such a recognition that partial payments are available in cases of this description.”
It is thus apparent that if the payment relied upon be made by the principal, or by any one on his behalf who is authorized to act, it will be operative to raise the promise by implication, and if made within the six years preceding the commencement of the suit, the defendant will be liable. It is a naked question of agency and of payment. ' It seems under the decisions to make but little difference in the case of a sale of collaterals and the application of their proceeds, whether it be done by an agent specially authorized to act in that matter, or whether it be performed by the holder of the promise, so long as by the terms of the convention he is entitled to sell and to apply as a payment the sums received-.
Some of the cases go so far as to declare, that there is no difference between an agency specially created for the purpose of making the sale and applying the money, and one arising by operation of the law, where the party holding the *472 securities, or the money, has the legal, right of disposal and appropriation arising from the transaction itself. It has been so held where goods have been given to the payee to be sold, the proceeds to be applied on the note, in the case of a delivery of another note as collateral, with authority to collect and apply, and also in the ease of a mortgage of property with power of sale. The courts say that in cases like these the paj^ment is not made by an intermeddling stranger, but by one who has been, by the act of the promisor, made his agent to do the identical thing which he performed. Under these circumstances the payment is not regarded as an involuntary oue, but one made in obedience to the direction of the payor, given when he entered into the obligation. Whipple et al. v. Blackington, 97 Mass. 476; Bender v. Markle, 37 Mo. App. 234; Porter v. Blood, 5 Pick. 53; Taylor v. Foster et al., 132 Mass. 30; Sornberger v. Lee et al., 14 Neb. 193; Haven et al. v. Hathaway, 20 Me. 345.
We are driven in the present case to no such extreme position. To uphold a recovery it is only necessary to decide that where the payment is made by the application of the proceeds of the sale of collaterals, and this has been done by an agent authorized to do this particular thing, it raises in the law a promise sufficient to remove the bar of the statute, if it be made within the six years preceding the suit. All these things concur in the present case. By an instrument in writing the payor, Rowland, expressly constituted Greene his agent, and clothed him with authority to sell the col-laterals and apply the proceeds to the payment of the note. This was done in exact conformity with the authority granted, and it must be held to be such a voluntary payment as will take the case out of the statute.
The judgment of the court below was not in harmony with the law as herein declared, and the case must be reversed and remanded for a new trial.

Reversed.