ROBERT W. GUINN v. WILLIAM D. SPILLMAN et al.

EJECTMENT — Adverse Possession — Case for Jury — Error.   C. obtained a tax deed which was defective, conveying a tract of wild land situate in a new and sparsely-settled region, most of which was prairie, and the remainder timber land.   For three years during his ownership the land was uncultivated, and there were no fences or permanent improvements thereon, but he leased it to others from which to cut hay.   Large quantities of hay were cut and stacked thereon, and there is evidence that the prairie land was best adapted and could be more profitably used for this purpose than any other, and, further, that such land in that vicinity was similarly used.   He engaged others to guard the land from trespass, and to protect the timber, while he employed still others to cut timber thereon and deliver the wood to him.   These things were done in good faith by C. as acts of ownership, and with a view of taking and holding possession of the land.   His claim of title was open and public, and no one disputed his possession or right of possession.   He paid all the taxes charged against the land until he conveyed it to G., who at once entered and resided upon the land, where he made improvements of a substantial character.   G. paid the taxes every year, and his possession was not challenged until more than 16 years after C. began to exercise control and dominion over it.   An action by other claimants was begun against G., who claimed title by adverse possession for the statutory period of limitation.   Held, That there was sufficient evidence of adverse possession to carry the case to the jury, and that the action of the court in directing a verdict in favor of the plaintiffs was reversible error.

### Error from Chase District Court.

ACTION by Spillman and others against Guinn, to recover possession of a certain tract of land in Butler county. The venue of the action was changed to Chase county. Judgment for plaintiffs at the February term, 1890. The defendant brings the case to this court. The facts are sufficiently stated in the opinion herein, filed December 9, 1893.

Redden & Schumacher, for plaintiff in error:

We think that, whatever may have been the rule in the New England and other older and well-settled states, in this state and in this portion of the United States, all that is

necessary, to establish an open, adverse and exclusive posses-
sion, is to show that land is being used in that way which is
most profitable, and in the same way and manner that ad-
joining land of similar nature and character is being utilized,
and that the person thus using it claims to be the owner,
and pays the taxes of the government as owner, and is recog-
nized by the community as such, and no one is interfering
with or disputing his claim.   Upon principle, the above is
undoubtedly the correct statement of the law, and a careful
examination of the authorities substantiates the above princi-
ple and leaves it no longer an open question, but establishes
and confirms it as the recognized doctrine of all the western
courts.   See *Clement v. Perry*, 34 Iowa, 564; *Fisher v. Ben-
nehoff*, 121 Ill. 439; *Curtis v. Campbell*, 54 Mich. 341; *Spar-
rows v. Hovey*, 44 id. 62; *Webber v. Clarke*, 15 Pac. Rep. (Cal.)
434; *Finn v. Land Co.*, 40 N. W. Rep. (Wis.) 209; *Forey v.
Bigelow*, 9 N. W. Rep. (Iowa) 313; *Stephenson v. Wilson*, 50
Wis. 99; *Haseltine v. Mosier*, 8 N. W. Rep. (Wis.) 273;
*French v. Pierce*, 21 Am. Dec. (Conn.) 682; *Baum v. Club*,
2 S. E. Rep. (N. C.) 673; *Cooper v. Morrison*, 7 Atl. Rep.
(N. J.) 427; *Lantry v. Parker*, 55 N. W. Rep. (Neb.) 962.

See further, as to adverse possession, the following authori-
ties: *Hoffman v. Woods*, 40 Kas. 384; *Forbes v. Caldwell*, 39
id. 14; *Murray v. Hudson*, 33 N. W. Rep. 889; *Davis v. De-
lany*, 87 Ill. 148; *Gildehaus v. Whiting*, 39 Kas. 706; *Gilmore
v. Norton*, 10 id. 491; *Ellicott v. Pearl*, 10 Pet. 442; *Ewing
v. Burnett*, 11 id. 53; *Zelin v. Rodgers*, 21 Fed. Rep. 108;
*Merril v. Tobin*, 30 id. 738; *Merril v. Shea*, 30 id. 743; *Booth
v. Smell*, 25 Iowa, 179; *Ellsworth v. Low*, 17 N. W. Rep. 450;
*Bowen v. Guild*, 130 Mass. 123; *French v. Pierce*, 21 Am. Dec.
680; *Langworthy v. Myers*, 4 Iowa, 18; *Stockton v. Geissler*,
43 Kas. 612; *East Railroad v. Allen*, 135 Mass. 14; *Sapp v.
Walker*, 24 N. W. Rep. 13.

Besides the above authorities, a case as near on all fours
with our case as two cases can well be has been decided by
this court since the trial of this case.   We refer to *Goodman
v. Nichols*, 44 Kas. 22.

32—52 KAS.

The court erred in instructing the jury to find for the plaintiffs in this case, because the question of adverse possession was a mixed question of law and fact; was one upon which we are entitled to have the judgment of the jury, under the law that the court might lay down.  The court could have given the jury such instructions as it saw proper, but we were entitled to go to that jury and argue the question of fact under the instructions, and the court was unwarranted in acting in the manner in which it did in depriving the jury of their province and the defendant of his constitutional right. *Webb v. Richardson*, 42 Vt. 465–472;  1 Thomp. Trials, § 1410; *Newman v. Cincinnati*, 18 Ohio, 323.

The court, in a jury trial, has nothing to do with reconciling contradictions in evidence. *Williams v. Norton*, 3 Kas. 296.  Where there is any evidence whatever tending to establish a defense set up, the court cannot weigh that evidence and say that it does not establish a given proposition, and therefore take the case from the jury and instruct them to find a verdict.  That a party has a right to have the jury pass upon the question of fact, see *Maduska v. Thomas*, 6 Kas. 153; *Thornburgh v. Cole*, 27 id. 499; *Kelley v. Ryus*, 48 id. 120; *Cattle Co. v. McLain*, 42 id. 680.  The right to argue a controverted question of fact before the jury is a constitutional privilege, and courts cannot deprive a party of such right. *Douglass v. Hill*, 29 Kas. 527.

*Gillett & Sadler*, for defendants in error :

In the case of a prescription in which it is sought to deprive him, who hath right, of his property, the law rightly requires the strictest proof of possession, evidenced by no doubtful or equivocal acts.  But this distinction must be noted :  There are possessory acts which one with adverse claim of title may do upon land, and which, if brought to the actual knowledge of the owner, and he suffers the same for the statutory period, might warrant the courts in presuming a grant, but which, in the absence of such knowledge on the part of the owner, would be entirely insufficient to warrant

such presumption. In the case at bar the owner had no notice. And right here is the occasion of many of the loose declarations as to what constitutes an actual, open and notorious, visible and continuous adverse possession.

It will also be noted that, in the divestiture of title by prescription, a distinction must be kept in mind between acts of possession and acts of ownership, for it is only the latter, continued uninterruptedly for the statutory period, that can divest the true owner's title.

The taking of a man upon the wild and unoccupied land by Cameron, and his offering the land for sale, may constitute acts of ownership, but they are in no sense acts of possession. They never start the statute to running. The same may be said as to payment of taxes, or the two combined. ·

The divestiture of title by prescription proceeds upon the theory of forfeiture; that the true owner has suffered an adverse possession of his land for the statutory period, and the public will not now, after the expiration of this period, allow him to reclaim it; and it is a familiar doctrine that all such laws are to be strictly construed, as the law abhors a forfeiture. The true rule is laid down with great clearness and felicity· in *Wells v. Austin*, 10 Atk. 405:

"An adverse possession of land that will work an ouster of the ownership must be open, notorious, hostile, and continuous. If stealthy, hidden, and intermittent, it will not avail. The tenant must unfurl his flag on the land and keep it flying, so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest."

Take the case at bar. All that the evidence of defendant below tended to prove as to adverse possession between 1872 and 1875 was, that a few loads of wood were cut and hauled to Cameron, and that the wild grass each of these seasons was in September cut, and either stacked on the land until it could be hauled away, or else hauled away as it was cut.

As a visible act of adverse possession, how did this differ from acts of trespass, committed to everybody's knowledge,

upon open and uninclosed lands, which the owners never thought of troubling themselves about? Who ever thought that, because some trespasser had cut and put up a stack of hay on his uninclosed land — frequently miles from anybody's house — some one had erected a challenge to his title, and was commencing a statute of limitations against his right?

The cases discussing the requisite possession for certain purposes are: *Gildehaus v. Whiting*, 39 Kas. 706; *Stockton v. Geissler*, 43 id. 612; *Goodman v. Nichols*, 44 id. 22; *Richards v. Smith*, 4 S. W. Rep. (Tex.) 571.

But where a prescription is relied upon for title, strict proof is required; and this is in accord with the great weight and current of authorities. *Dewey v. McLain*, 7 Kas. 126; *Hoffman v. Woods*, 40 id. 384. See, also, *Washburn v. Cutter*, 17 Minn. 361; *Brown v. Rose*, 55 Iowa, 734; *Turner v. Hall*, 60 Mo. 272–275; *Pike v. Robertson*, 79 id. 615–618; *Musick v. Barney*, 49 id. 458.

In *Gildehaus v. Whiting*, 39 Kas. 706, this court has very nearly announced the doctrine we contend for as to the character of adverse possession necessary to sustain title by prescription.

Certain cases in California, by virtue of a statute of that state, have held pasturing a portion of the year a good continuous possession to maintain the statute of limitation. But these decisions properly rest upon the statute.

In Iowa, some of the earlier decisions went a long way toward upholding the pernicious, agrarian and dangerous doctrines contended for by the plaintiff in error; but the later decisions have greatly modified the earlier tendencies.

The true doctrine, in cases where prescriptive rights are claimed against the true owner, we think well argued and presented in nearly all the cases above referred to, but especially in the last three cases, cited from the supreme court of Missouri.

If our contentions are sound, no error was committed by the court in directing a verdict for plaintiffs below.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action by William D. Spillman, Margaret Spillman, Fannie J. Hickey, Ella Greer, and Joseph W. Robertson, heirs of N. J. Spillman, deceased, to recover from Robert W. Guinn a 240-acre tract of land in Butler county. The claim of title of the plaintiffs below was based on patents from the United States, one of which was dated April 1, 1861, and the other May 1, 1862, both of which had been issued upon entries made with bounty land warrants assigned to N. J. Spillman. After the decease of Spillman, his widow, Mary Ann Spillman, who became administratrix of the estate of the deceased, located the warrants, and the government granted the lands to her as administratrix of the estate, and to her heirs and assigns. Guinn rested his claim of title upon a sale of the land for taxes in 1869, to the county of Butler, an assignment of the interest of the county to W. J. Cameron, J. D. Connor, and W. S. Fenno, upon the payment by them of all the taxes and charges existing against the land to the time of assignment; a tax deed executed by the county clerk of Butler county on May 5, 1872, to Cameron, Connor, and Fenno; a conveyance from Connor and Fenno to W. J. Cameron, dated April 18, 1874; and a conveyance by warranty deed from W. J. Cameron and wife to Robert Guinn, dated February 12, 1875; together with the claim of actual, open, continuous and exclusive possession of the land by the grantors of the tax deed, and those holding under them, from 1872 until August 28, 1888, when this action was commenced. At the trial, the plaintiffs below introduced an exemplification of the records of the general land office showing the acquirement, assignment and location of the land warrants and the issuance of the patents.

Some objections were made to the admission of their testimony, but we see nothing substantial in them. The principal and controlling question in the case is as to the character of the possession of the land by Guinn and his grantors, and

whether it is such as will give title at the end of the statutory limitation. After the testimony relating to the possession was introduced, the court held it to be insufficient, and took the case from the jury, by directing a verdict in favor of the plaintiffs below.

It appears to be conceded that the tax deed to Cameron and his associates, and which constitutes the color of title in favor of Guinn, was defective and invalid. The question we have to decide, then, is whether the testimony offered by Guinn, and against which there was little counter proof, tended to sustain the claim of adverse possession for the requisite length of time. The possession of Guinn from the time of his purchase was undoubtedly actual, notorious, and exclusive. He paid full consideration for the land, continuously resided upon it, made improvements of a substantial character, such as the construction of a house, barn, and corrals, building fences, breaking prairie, and, further, he paid the taxes levied against it from the time of his purchase till the commencement of the action. Neither the plaintiffs nor anyone else questioned his right nor disturbed his possession. There can be no doubt that his possession was adverse, but, as it continued less than 15 years, the character of the possession of those under whom he holds becomes important in determining whether, when coupled with his own, it is sufficient to give him title. There is testimony that W. J. Cameron had charge and control of the land on behalf of himself and associates until they conveyed to him. It was known as the "Cameron land," and he was recognized as the owner by persons living in the vicinity. In 1872, he leased the land to one Thompson, who made hay from all parts of the prairie land which was suitable for haying, and stacked the hay upon the land. There was a growth of timber on a portion of the land, and Thompson was employed to guard the timber land and prevent anyone from trespassing thereon or from cutting timber. In the fall of that year he granted to one Rose the privilege of cutting some wood from the timber land. In 1873, Cameron granted to one Bauman the right to cut grass on

the land for that and the subsequent year. He made hay on all the land that was fit for haying in both years and stacked the hay upon the land. He cut about 200 tons in 1873, and the subsequent year being a dry year, only about 40 tons were obtained from the land. In 1872, Rose, in accordance with his employment, cut timber upon the land and delivered a portion of it to Cameron. In 1873, Cameron engaged one Jackson to guard the timber land, and he states that while it was conceded to be Cameron's land one person was detected taking wood therefrom, who afterward settled with Cameron for that which had been taken. Another neighbor, named Bishop, whose land adjoined that of Cameron's, was placed in charge of the timber for one year. And it appears that all the parties so employed did protect the timber and prevent the intrusion of trespassers upon the land. The acts of Cameron in leasing the land, cutting and stacking hay thereon, and the cutting and protection of the timber, as well as the guarding of the land from trespass, were all done for the purpose of taking possession of the land and to assert ownership and dominion over it. No one interfered with his possession nor disputed his claim of title during this time. He frequently went upon the land and took parties upon it with a view of selling it. He paid the taxes levied against it for the years 1872, 1873, and 1874, and since that time the taxes have been paid by Guinn. In those years that region of country was sparsely settled, and there is testimony to the effect that the land in the vicinity was largely unoccupied and untilled. It was then regarded that it could be more profitably used for grazing or the cutting of hay thereon. The land was not inclosed during Cameron's ownership, but the herd law had been adopted in that county in 1872, and has continued in force since that time.

The court, after hearing this evidence, determined that it did not tend to sustain the claim of adverse possession, and therefore refused to submit it to the jury. Was there sufficient evidence to take the case to the jury? We may lay aside any conflicting testimony, as the court had nothing to

do with that. If the evidence, though weak, fairly tended to sustain the claim of adverse possession, the court was required to submit it to the consideration and judgment of the jury. The action of the court in directing the verdict cannot be sustained, unless it can be said that, admitting every fact proven in favor of Guinn and every fact which the jury might fairly and legally infer from the evidence favorable to him, still he failed to make out some one or more of the material facts of his claim. Measuring the evidence in accordance with this well-known rule, we think Guinn was entitled to have the case submitted to the jury. When the acts of ownership and possession are considered in connection with the condition of the country, the purposes for which such land was adapted, and the fact that it was used and treated much the same as were the adjoining lands of other owners, and used in the most profitable manner then in vogue, we cannot say that the possession was not adverse. We think the claim of absolute title, the undisputed control, the leasing, guarding and protecting of the land, the cutting and stacking of hay thereon, the care and cutting of the timber, and the payment of taxes, tended to establish open, exclusive and adverse possession. It seems to have been the theory of counsel, that because Cameron had not cultivated, inclosed or erected permanent improvements upon the land, there was nothing to indicate an attempt to found a hostile title by possession. None of these things are absolutely essential in order to establish title by adverse possession. In *Gilmore v. Norton*, 10 Kas. 506, it was held that it is not necessary that a person should always be actually upon real estate, nor that he should actually reside thereon, neither that there should be any improvements upon the property, in order that he may be in the actual possession of the same. There may be an actual possession of uninclosed, unimproved land. No rule of general application as to what will constitute adverse possession can be safely laid down, as much necessarily depends upon the character and situation of the land, and the uses to which it is adapted; and so it is frequently said that the rule requiring

actual and visible occupancy should be more strictly construed in an old and well-settled country, where the land is improved, than in a new country, where the land is only partially improved.

*Gildehaus v. Whiting*, 39 Kas. 706, is much relied on by defendants in error as an authority to show that the facts in this case do not constitute adverse possession. It was there held that the recording of a conveyance by a grantor who had no title, the payment of taxes for a number of years by the grantee, and a public claim of title to vacant lots, was not conclusive evidence of an adverse holding and of ownership. It was strongly urged in that case that, although the lots were vacant, these acts of ownership were sufficient to establish an adverse possession; but the court was unable to yield its assent to that view, not because those acts were not some evidence of ownership and possession, but rather because the trial court had held that, under the circumstances, they were insufficient to constitute adverse possession. If the finding of the trial court in that case had been to the contrary, a different result might have been reached in this court. That case, however, recognizes that some of the facts existing in this case constitute evidence of possession and ownership which would require a submission to the jury. In that case, and those therein cited, it was held that the payment of taxes is *prima facie* evidence of ownership, and that where the land claimed is subjected to the will and dominion of the claimant manifested in some appropriate manner, residence upon the property is not essential; and that in such case an inclosure is unnecessary.

"In the case of grazing land, in a grazing country, herding sheep upon it would seem to be an 'appropriate use, according to the locality and quality of the property.' Accordingly, we find that in two cases pasturage of cattle within an inclosure was held to be sufficient against intruders, and it was held that pasture without an inclosure was sufficient, the cattle being confined to the land by herders."

See, also, *Webber v. Clarke*, 74 Cal. 11, and cases there cited; also 15 Pac. Rep. 434. See, also, the following author-

ities, cited and commented on in *Gildehaus v. Whiting*, supra: *Ellicott v. Pearl*, 10 Pet. 412; *Ewing v. Burnet*, 11 id. 41; *Langworthy v. Myers*, 4 Iowa, 18; *Draper v. Shoot*, 25 Mo. 191; *Ludlow's Heirs v. McBride*, 3 Ohio St. 241. In a recent case involving facts somewhat similar to those in the present case this court sustained the finding of adverse possession. (*Goodman v. Nichols*, 44 Kas. 22.) In *Curtis v. Campbell*, 54 Mich. 340, it was held that

"An owner of out-lots which he does not fence or cultivate may establish an adverse possession by cutting grass and timber, ditching, paying general and special taxes, and openly and notoriously claiming and using the land." (See, also, *Sparrow v. Hovey*, 44 Mich. 63.)

In *Lantry v. Parker*, 55 N. W. Rep. 962, it is said that

"The protection of grass during the growing season, and the cutting, curing and disposal of the hay at the proper periods, constitute actual possession in the defendant, especially when taken in connection with his using it in like manner as the surrounding land and his acts to prevent its use by others."

In *Finn v. Land Co.*, 40 N. W. Rep. 209, it was held, that where a plaintiff went upon the land a number of times every year to see whether trespass was being committed thereon, to look over the timber, and to run out lines on which to build roads to get out some of the timber, and that the roads were built, and timber was cut during each winter to be used for fence rails and firewood on plaintiff's farm, which adjoined the land, and for other purposes, and where his occupancy during the winters was not accidental, but was open, notorious, and continuous, and in the usual manner that timber lands were occupied, the possession was adverse, and that the land was at no time vacant or unoccupied, within the meaning of the statute. In *Clement v. Perry*, 34 Iowa, 564, it was held that

"Where a person claiming land exercises acts of ownership over it by the use of it for the purposes to which it is adapted, his possession will be regarded as actual and adverse. So held in respect to uninclosed timber land on which the person claim-

ing to be the owner cut wood and timber for ordinary purposes during the period of his ownership."

In *Forey v. Bigelow*, 56 Iowa, 381, it was decided that

"Where lands are open and uninclosed, but it appeared that defendant and those under whom he claimed had for more than 10 years claimed and exercised the exclusive right to cut timber and grass therefrom, and had at various times sold the right to cut grass to others, that such possession was effectual as actual inclosure of the land."

In the same line, see *Murray v. Hudson*, 33 N. W. Rep. 889; *Cooper v. Morris*, 7 Atl. Rep. 427; *Fisher v. Bennehoff*, 121 Ill. 426; *Stephenson v. Wilson*, 50 Wis. 95; *Baum v. Shooting Club*, 2 S. E. Rep. 673. These authorities strongly sustain our view that there was sufficient evidence to carry the case to the jury, and from which the jury might have found adverse possession from 1872 such as would confer title upon Guinn. Whether this evidence would have been satisfactory to this court upon that question as an original question, it is unnecessary to determine. For the present, the only inquiry is, whether it was sufficient to require a submission of the same to the jury. We are clearly of opinion that it was, and, hence, we are unable to sustain the ruling of the court.

In view of the conclusion that we have reached, the other questions suggested need not be decided. The judgment of the district court will be reversed, and the cause remanded for another trial.

All the Justices concurring.