### O. P. DICKINSON v. JOSEPH S. BALES *et al.*

#### No. 10564.

1. ADVERSE POSSESSION—*must be such as to raise presumption that real owner knows it is adverse to his title.* To constitute adverse possession of land, it is not absolutely necessary that there should be inclosure, buildings, or cultivation, but the acts done must be such as to give unequivocal notice of the claim to the land, adverse to the claims of all others, and must be of such a character and so openly done that the real owner will be presumed to know that a possession adverse to his title has been taken.

2. ——— *payment of taxes does not constitute.* The payment of taxes alone, while some evidence of ownership, does not constitute adverse possession.

3. ——— *certain acts held not to establish, in particular case.* The taking of a deed, the payment of taxes, and an occasional trip by the claimant to inspect wild, uninclosed prairie land, together with permission given by him in one instance for the cutting of grass thereon, is not deemed to be sufficient under the circumstances of this case to establish an adverse possession.

Error from Greenwood District Court. A. M. Jackson, Judge. Opinion filed March 5, 1898. *Reversed.*

*R. P. Kelley*, for plaintiff in error.

*Overmyer & Mulvane*, for defendants in error.

JOHNSTON, J.  O. P. Dickinson, apparently the owner of the Government title to the land in controversy, brought an action to recover the same against Joseph S. Bales, the grantee under a void tax title. The defense of Bales was adverse possession, and whether there was continuous adverse possession of the land for fifteen years was the only substantial dispute between the parties.  It was determined in favor of Bales, and the main contention here is that the testimony does not sustain the finding of the jury.

It appears that Bales purchased the land in 1885, and soon afterward took possession of the same, making substantial improvements of considerable value. He occupied the land about ten years prior to the commencement of this action, and, without doubt, his occupancy had all the essential elements of adverse possession.  The trouble in the case arises as to the character of the possession of the grantors.  To complete his defense, it was necessary to tack to his own the continuous adverse possession of his grantors from March 6, 1880.  An attempted sale of the land was made by Greenwood County to J. B. Pierce, in 1879, and it is contended that he took possession of the land, and continued to exercise dominion over it until April 15, 1884, when he sold it to Roxanna E. Sutton, and that her possession continued until she sold the land to Bales, in 1885.  Until Bales obtained the land in 1885, it was unbroken prairie, without fences, buildings, or improvements of any kind.  The taxes on the land were paid by Pierce from 1879 up to and including the year 1883.  No taxes appear to have been paid by Sutton, but the taxes for 1884 were

15—59 KAN.

subsequently paid by Bales. After Pierce received a deed from Greenwood county, he executed a mortgage upon the land. Soon after he purchased it, he went upon the land, and occasionally thereafter he went upon it up to the time of the sale to Sutton. He took parties to see the land, several times, and gave permission to a person to cut grass upon the same, but the grass, when cut, was moved off the premises. Sutton does not appear to have ever been upon the land, and, as we have seen, he paid no taxes thereon.

The jury found that the actual possession of the land was taken by Pierce in 1879; and, in answer to the question as to what he did in taking actual possession, stated that he "paid taxes." In answer to the question as to what Pierce ever did toward improving the land, or taking actual, exclusive and notorious possession of it, prior to May 1, they said: "Paid taxes, and gave permission to cut hay." To the question as to what Roxanna E. Sutton did toward improving the land or taking actual or exclusive possession of it prior to May 1, 1885, they answered: "Nothing, except offered the same for sale." The jury were asked what she ever did toward taking actual possession of the land, and they answered: "Received deed from J. B. Pierce." They were asked when Pierce took actual possession of the land, and what he did to take possession, and the answer to that question was: "When deed was received and taxes paid."

It appears to us that the acts of Pierce and Sutton as disclosed by the testimony fell short of adverse possession; such possession as will divest the title of land. Pierce went out from time to time and looked at the land, rode over it, and several times took persons out to see it; but these acts would be very little warning to an owner that another claimed the land or was asserting a title

1. Adverse possession is what.

thereto adverse to his own. The land being open and unoccupied prairie, the fact that one or more persons went upon or over it would hardly indicate an attempt to found a hostile title by possession. One of the witnesses for Bales testified that in that region such land was treated as a common. It was used by any one as a range, and those who wished went upon the land and cut grass. To constitute adverse possession it is not absolutely necessary, it is true, that there should be inclosure, buildings, or cultivation; but, considering the purposes for which the land is adapted, the possession must be actual, visible and exclusive. The acts done must be such as to give unequivocal notice of a claim to the land adverse to the claim of all others, and must be of such a character and so openly done that the real owner will be presumed to know that a possession adverse to his title has been taken. The acts of Pierce in occasionally going upon or driving over the land is not such notice; and this was evidently the view of the jury. They did not include these acts in their answers to the several questions as to what was done by him toward taking or holding adverse possession. Indeed, they appear to have mainly based their finding of adverse possession upon the mere payment of taxes. In answer to the question what he did in taking actual possession, in one

2. Payment of taxes does not constitute adverse possession.

instance they stated that he paid taxes, and in another that he received the deed and paid the taxes, and in still another that he paid the taxes and gave permission to cut hay. It is well settled that the payment of taxes alone does not constitute adverse possession, and is not of itself an evidence of ouster. It is some evidence of ownership, and may be considered in connection with acts asserting dominion and title to the land. *Stockton v. Geissler*, 43 Kan. 612, 23 Pac. 619.

The taking of a deed is not sufficient to constitute adverse possession. It must be followed by actual possession — that is, by such acts of dominion and use as are appropriate to the locality and character of the land.. It is true, that in one instance Pierce gave some one permission to cut grass from the land; but the grass, when cut, was not stacked on the land; and this act was not sufficient under the circumstances to evince an intention of asserting ownership and possession. The cutting of hay upon uncultivated and uninclosed land was regarded as an important consideration in *Guinn v. Spillman*, ( 52 Kan. 496, 35 Pac. 13,) but there the party claiming the land had leased a part of it from which to cut hay for a series of years, and large quantities of hay were stacked upon the premises and stood there as a visible mark of possession. This has been regarded as a border case in respect to the sufficiency of the acts of ownership and possession ; but, aside from the payment of the taxes and the repeated cutting of grass and stacking of hay upon the premises, there was in that case the employment of persons to guard the land from trespass and to protect the timber on the land, and, in addition, the cutting of timber, and the delivery of the wood so obtained to the claimant. All these acts and circumstances were deemed sufficient to make a *prima facie* case of adverse possession ; but the acts of the claimant in the present case do not approach an actual, visible, notorious occupation, and therefore we are constrained to hold that the testimony is insufficient to sustain the verdict and judgment.

*3. Certain acts do not establish adverse possession.*

Some objection is made to the authenticity of the secondary proof which plaintiff offered to establish his title. Record copies of the instruments of conveyance were introduced for that purpose. It ap-

pears, however, that no objections were made to the authentication or the sufficiency of this evidence when it was offered and admitted. Aside from that, the fact that the plaintiff held the paper title appeared to be conceded by all the parties, and so the court instructed the jury that the only serious question of fact left for their determination was whether or not the defendant and his grantors had been in the open, visible, notorious and adverse possession of the land for the period of fifteen years before the commencement of the action.

There is some claim, too, that there never had been a delivery of the deed made by the plaintiff's immediate grantor, conveying the premises to him. We think that this inference is not warranted. It appears that he never had possession or control over any of the deeds in his chain of title in which he was "not a grantee." This does not admit, however, that he never had the possession of the one in which he was grantee.

The controverted question, and the only one tried in the court below, was the claimed adverse possession of the defendant, and the evidence in the record being insufficient to show adverse possession, it follows that the judgment of the District Court must be reversed and the cause remanded for further proceedings.