No. 38,717

CECIL I. TUCKER and EDNA C. TUCKER, his wife, *Appellants,* v. CHESTER H. HANKEY and ELIZABETH HANKEY, his wife, *Appellees.*

(250 P. 2d 784)

Opinion filed December 6, 1952.

*Riley W. MacGregor,* of Medicine Lodge, argued the cause, and *Vernon F. Coss,* and *John W. MacGregor,* both of Medicine Lodge, were with him on the briefs for the appellants.

*O. M. Wheat,* of Medicine Lodge, argued the cause, and was on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This is an action in ejectment growing out of a controversy over the vacation of a 20 foot alley by the city of Kiowa. The alley abuts lot 9 and the south 20 feet of lot 8 in block 52 on the west, and lot 10 in block 52 on the east.

The appellees, husband and wife, are the owners of lot 9 and the south 20 feet of lot 8. Appellants, husband and wife, are the owners of lot 10. Appellants will be referred to as plaintiffs and appellees as defendants.

In their petition, plaintiffs allege in substance their ownership in lot 10 and defendants ownership of lot 9 and the south 20 feet of lot 8; that block 52 was originally platted by the city with a 20

foot alley between lot 10 and lots 9 and 8; that the alley was duly vacated by the city in the year 1907, and that the east 10 feet reverted to lot 10, and the west 10 feet to lots 9 and 8; that defendants knowingly and wilfully erected a clothesline approximately 6 feet to the east of the center line of the alley and on plaintiff's portion of the vacated alley. Although plaintiffs have made demand for the removal of the clothesline, the defendants refuse to remove the same. Plaintiffs pray that defendants be ejected, and they be declared the rightful owners of the east half of the vacated alley.

By way of answer, defendants admitted they were owners of lots 9 and 8 and in possession of the alley as alleged, and specifically denied any reversion of the alley to lot 10, further alleging that the defendants were the owners of the entire vacated alley, and praying that the court decree them to be the owners thereof and to quiet title in them. In addition, the answer contained a general denial of all matters in plaintiffs' petition, except the mentioned admissions.

The plaintiffs moved for judgment on the pleadings as formed, which motion was denied. The cause proceeded to trial and the evidence of the respective parties disclosed the following facts:

In the year 1904, one Benton acquired title to the property now owned by defendants. He owned this property until the year 1940 when he sold it to one Ikerd. In 1944 Ikerd sold the property to one Wiley who conveyed to the defendants Hankey in 1948. They are the owners and in possession of lot 9 and the south 20 feet of lot 8. Soon after Benton acquired title he constructed the residence on the lots along with several outbuildings and fencing. In the year 1913 Benton put up a five-foot woven-wire fence with barbed wire on the top. The fence ran north and south along the full width of Benton's property on the east boundary line of the alley. The corner posts of the fence were set in cement. Benton also constructed a fence along the north boundary of his property which ran across the alley and connected with the north-south fence. These fences were kept and maintained by Benton and his grantees until the time defendants acquired ownership, and thereafter until removed by plaintiffs as hereinafter related. Defendants continued to occupy and claim all the property up to the fence line. Benton also built a barn with a cement floor, a part of which was on the east half of the alley. A clothesline was also erected, the east post being placed in the fence line along the east line of the alley. The north and south fence running along the east side of said alley was

shown to and considered by Benton's subsequent grantees as being the east line of lots 8 and 9, and defendants claimed the fence as the line, regardless of whether it was the true line. It appeared that lot 10 was vacant and unoccupied until the plaintiffs acquired ownership thereof some time during 1950. One Allen acquired lot 10 in 1941 and he considered the north and south fence line as being the west line of his property. He conveyed the lot to one Helmley in 1943 who, in turn, conveyed it to the plaintiffs in 1950. The owners of lot 10 and predecessors in title to plaintiffs were all acquiescent in the fences built by Benton in the year 1913. Plaintiffs had no conversation about property lines prior to their purchase of lot 10 in 1950. That fall, plaintiffs desiring to build a home on lot 10 went to defendants and asked permission to take down the fence and clothesline so they could construct their residence. Defendants agreed that plaintiffs could remove the fence and clothesline while constructing the house if they would replace them upon its completion. The plaintiffs agreed to do this, but after they completed their residence they failed to replace the fence and clothesline as agreed upon and brought this action against defendants for ejectment.

At the conclusion of the evidence the trial court handed down its memorandum decision reviewing and analyzing the evidence, making certain findings of fact, and concluded as a matter of law that defendants Hankey had acquired title by adverse possession to all of the alley abutting on lot 9 and the south 20 feet of lot 8, and entered judgment in accordance therewith, quieting the title to said property in defendants. The plaintiffs filed their motion for a new trial which was overruled by the court, from which ruling plaintiffs bring the case here, asserting five separate specifications of error which will be discussed in order.

Plaintiffs first contend that the trial court erred in overruling their motion for judgment on the pleadings. This action was ejectment. The answer of the defendants was a general denial, except as to certain admissions not pertinent to plaintiffs' motion. G. S. 1949, 60-2002 provides that it shall be sufficient in an ejectment action if the defendant in his answer denies generally the title alleged in the petition. We have held that in an ejectment action wherein plaintiff alleges he is the owner of a tract of land and is entitled to possession thereof, and the defendant is unlawfully keeping him out of possession of the same, the answer of defendant denying gener-

ally the averments of the petition is sufficient, and under an issue so joined the defendant is entitled to prove any fact that would sustain his own title or defeat that claimed by the plaintiff. (*Wiggins v. Powell,* 96 Kan. 478, 152 Pac. 765; *Luttgen v. Ergenbright,* 161 Kan. 183, 187, 166 P. 2d 712.) The demurrer was properly overruled.

Plaintiffs next contend the court erred in admitting certain evidence over their objections. It is noted that plaintiffs did not assert this as one of their grounds in their motion for a new trial.

We have held many times that trial errors and irregularities must be shown by the record to have been presented to the trial court on a motion for new trial before they can be considered by this court on appeal. Not having been so presented to the trial court, plaintiffs' specification of error is not reviewable. (G. S. 1949, 60-3001, 60-3003; *Robinson v. Davis,* 162 Kan. 44, 46, 174 P. 2d 111; *Holton v. Holton,* 172 Kan. 681, 243 P. 2d 222; [1] Hatcher's Kansas Digest [Rev. Ed.], Appeal and Error, §§ 304, 366.)

Plaintiffs next contend that the court erred in overruling their demurrer to defendants' evidence and in entering judgment for defendants. The parties discuss these two specifications together and we will consider them in the same manner. Plaintiffs contend that defendants failed to sustain the required proof to show adverse possession and that the evidence disclosed defendants and their predecessors in title were claiming to a mistaken boundary line, and title to such property cannot be established through adverse possession, citing authorities to sustain their contention.

From a review of the record, the question of mistaken boundary is not involved here. The parties and their predecessors received title to their respective lots by lot numbers only. There was no evidence to indicate that Benton was acting under mistake, or that he inadvertently constructed the valuable improvements on the property in question.

It may be stated that the question of adverse possession is one of intention. The intent with which the occupant has held possession is to be determined from all of the surrounding circumstances and especially from the acts of the possessor. His intention need not have been manifested by words of mouth. (2 C. J. S. 519, § 7.) The real test as to whether or not the possession of real estate beyond the true boundary line will be held adverse is the intention with which the party takes and holds possession. It is not merely

the existence of a mistake but the presence or absence of the requisite intention to claim title that fixes the character of entry and determines whether the possession is adverse. (*Schlendler v. Maretoli,* 140 Kan. 533, 535, 37 P. 2d 993.)

To constitute adverse possession of land, it is not absolutely necessary that there should be inclosure, buildings, or cultivation, but the acts done must be such as to give unequivocal notice of the claim to the land, adverse to the claims of all others, and must be of such a character and so openly done that the real owner will be presumed to know that a possession adverse to his title has been taken. (*Dickinson v. Bales,* 59 Kan. 224, 52 Pac. 447.) No paper evidence of a transfer of possession of land held under a claim of the first entry is necessary. Where the possession of real estate is actual, it may commence in parol without deed or writing, and may be transferred and pass from one occupant to another by parol or bargain and sale accompanied by delivery. (*Manufacturing Co. v. Crawford,* 84 Kan. 203, 114 Pac. 240.)

Applying the foregoing rules to the facts before us, we conclude there was ample evidence to establish that both plaintiffs and defendants, when purchasing the respective properties, recognized the fence in question as being the boundary line between their properties. Defendants' predecessors had placed valuable improvements on the disputed property, consisting of a barn with a cement floor which had remained there for over forty years; that fences were constructed of woven wire, five feet in height with additional barbed wire on top with posts set in cement, on the line in question; that a clothesline was also placed on the fence line. The fence, barn and clothesline had been notice to all concerned for nearly forty years. Defendant testified that when he purchased the property in 1947 he was shown the fence to be his east boundary line and that it was his intention to claim the fence as being the property line whether or not it was the true line. One Allen, plaintiffs' predecessor in title, testified he purchased lot 10 in 1942 from one Hobbs who told him the fence was the property line. Allen owned the property until 1944, and testified he considered and understood the fence to be the west line of lot 10 from the time he bought the property from Hobbs until he sold it to one Helmley, plaintiffs' immediate predecessor in title. He further testified he agreed that the fence was the property line of lot 10, and that he was satisfied therewith. When plaintiffs purchased lot 10, the clothesline, the fence and the permanent cement floor to the barn were apparent to them. This

was evidence that defendants were claiming some interest in the property and disclosed that they were occupying all the property adjacent to them, up to the fence line. Shortly after the purchase of lot 10, plaintiffs decided to build a house on the lot and, in order to facilitate the building of it, they contacted defendants and asked permission to remove the fence and clothesline, upon the promise that they would replace them after the house was constructed, and under this condition permission was granted by defendants. After the house was completed, plaintiffs refused to replace this fence and commenced this action.

The trial court, in applying the foregoing rules to the evidence presented, found that defendants had a clear case of adverse possession of all the alley up to the north and south fence line and that during all of the approximately forty-three years the possession of Benton and his grantees was exclusive, hostile, actual, open, notorious and uninterrupted, and entered judgment quieting defendants' title in all of the vacated alley up to the north and south fence line.

It may be said that in case of doubt as to whether an occupant of land claims adversely and under a claim of right so as to acquire title under G. S. 1949, 60-304, it is a question of fact which must be submitted to the court for determination. The court having heard the evidence, made its findings of fact, we cannot say there was not sufficient evidence to sustain them. The principle is thoroughly settled in this state that the determination of the issuable facts is no concern of an appellate court provided there is sufficient evidence on which the judgment can be based. (*Jones v. Jones,* 161 Kan. 284, 167 P. 2d 634; *Brecheisen v. Clark,* 103 Kan. 662, 176 Pac. 137.) And again we have stated that the judgment on the facts made by the trial court will not be disturbed on appeal, unless all the competent and creditable evidence constrains a different conclusion. (*Trager v. Elliott,* 106 Kan. 228, 232, 187 Pac. 875; *Bruington v. Wagoner,* 100 Kan. 439, 164 Pac. 1057; *In re Estate of Johannes,* 173 Kan. 298, 300, 245 P. 2d 979.)

We find nothing in the record approaching reversible error. The findings and judgment of the lower court are based upon substantial, competent evidence and, such being the case, will not be disturbed on appeal.

The judgment of the lower court is therefore affirmed.

HARVEY, C. J., dissents.