No. 40,454

TRUCK-TRAILER SUPPLY COMPANY, INC., a Corporation; L. E. WHIT-
LOCK and G. M. WHITLOCK, *Appellants,* v. F. J. FARMER, *Ap-
pellee.*

(311 P. 2d 1004)

Opinion
filed June 8, 1957.

*William E. Goss,* of St. John, argued the cause, and *S. R. Blackburn, Tudor
W. Hampton, Jerry M. Ward* and *J. W. Hannah,* all of Great Bend, were with
him on the briefs for the appellants.

*Evart Garvin,* of St. John, argued the cause, and *Robert Garvin* and *Morris
Garvin,* both of St. John, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action involving the ownership of and title to a strip of land seventy-five feet in width and 150 feet in length in the city of Stafford. Appellants L. E. and G. M. Whitlock will be hereinafter referred to as plaintiffs, and appellee F. J. Farmer, as defendant.

The city of Stafford was incorporated in 1885. Pearl Avenue, the property in question, was included in the plat as the western-most street. In 1886 the limits were extended to include property adjoining Pearl Avenue on the west. Plaintiffs' property joins and lies east and defendant's property joins and lies west of Pearl Avenue. The pertinent part of plaintiffs' petition alleged that on June 15, 1953, defendant fenced and took possession of all of Pearl Avenue, preventing plaintiffs' use of the same; that defendant's acts constituted a purpresture and a nuisance. Plaintiffs asked that the defendant be enjoined and restrained from interfering with the plaintiffs' use of the property.

Defendant's answer admitted the incorporation of the city, which included Pearl Avenue; alleged that the street was never open or used by the public; and alleged that Ordinance No. 200 of the city of Stafford, subsequently passed, established the west line of the city to be along the east boundary of Pearl Avenue and that by reason thereof the street had been vacated in the year 1905. Defendant further alleged that he acquired the same by adverse possession and asked that title to the property in question be quieted in him.

The case was tried to the court and judgment was entered, quieting title to the property in question in the defendant. From an order overruling plaintiffs' motion for a new trial, they appeal.

It being conceded that Pearl Avenue was included as the western-most street in the plat of the incorporated city of Stafford in 1885, the first question presented for our determination is whether Ordinance No. 200, passed by the city July 11, 1905, re-establishing the boundaries of the city, excluded Pearl Avenue, the property in question herein, from the city. Plaintiffs contend that this ordinance did not affirmatively mention the exclusion of any property from the city nor did it recite any proceedings had prior to its passage; that it was incumbent upon defendant to show the proceedings leading up to the passage of the ordinance prior to its enactment; and

that the city had no statutory power by ordinance to vacate property by merely redefining the boundaries of the city limits.

The legislature made provisions for the vacation of townsites and parts thereof and by the Laws of 1905, chapter 519 (G. S. 1909, Ch. 123), provided in substance in section 1 that when the owner or owners of a part of an addition to any town or lands adjoining on both sides of any street should desire to have the same vacated, he or they should give public notice in some newspaper as prescribed, stating that a petition had been filed in the office of the county clerk directed to the board of county commissioners, praying for such vacation. Section 2 provided that upon presentation of such petition to the board they should hear the same and if upon a hearing a majority of the members were satisfied from the evidence that proper notice had been given and that no private rights would be injured by such vacation and that the public would suffer no loss or inconvenience thereby, the board should order the vacation and any land so excluded should be listed for future taxation the same as though it had never been a part of such town. Thereupon, the county clerk should certify a copy of such order to the register of deeds, who should write on the margin of the recorded plat of such townsite the words "canceled by order."

Section 3 of the act further provided that the streets so vacated should revert to the owners of the real estate immediately abutting thereon, according to the frontage of such real estate; provided, that all lands so reverting would revert to the owners of abutting lands holding the same by title derived directly or indirectly from the owners of said land from which said street reservation was originally platted. Section 7 of the act provided that whenever the board should by order exclude any territory they should order the boundaries of such city changed to conform to the territory remaining in such city after such exclusion and the county clerk should certify a copy of the order to the mayor and council of such city, who should thereupon by proper ordinance record the change. The law became effective February 18, 1905.

Subsequent thereto and on July 11, 1905, the city of Stafford passed Ordinance No. 200 defining the city limits. Section 1 provided:

"That all of the additions, divisions and subdivisions and the streets and alleys thereof, *as the same appears of record in the register of deeds' office* of Stafford county, Kansas; and all of the alleys, streets, blocks, tracts and parcels of land lying and being within the following boundaries, be and are

hereby attached to and made a part of the said city of Stafford, and the limits of said city is defined and established as follows, to wit." (Emphasis supplied.)

The description made the eastern boundary of Pearl Avenue the western boundary of the city, thereby leaving Pearl Avenue out of the city limits. It is here noted that at the time of the introduction of Ordinance No. 200 into evidence no objection was made on the part of plaintiffs as to its invalidity.

It is clear from the mentioned statute that the power to vacate townsites or any portion thereof was granted to the board of county commissioners and upon such vacation the county clerk would certify a copy of the order to the register of deeds of the county for recordation and would certify a copy to the mayor and council of the city, whose duty it was on proper ordinance to record the change. The presumption is that the county commissioners under proper proceedings vacated Pearl Avenue and the city of Stafford, in compliance with the mentioned statute, passed such ordinance, redefining the limits of the city as they appeared from the order of the county commissioners filed in the office of the register of deeds. Moreover, the introduction of the ordinance itself carried with it the presumption that all prerequisites to its adoption and publication had been complied with, that the ordinance was a valid and subsisting ordinance and that the burden of proving its invalidity was on the person asserting it. (2 Dillon, Municipal Corporations, 5th Ed., § 649; *Moore v. City of Pratt*, 148 Kan. 53, 57, 79 P. 2d 871.)

In *State, ex rel., v. City of Atchison*, 92 Kan. 431, 140 Pac. 873, we stated that where an ordinance which had been regularly passed by a city council and approved by the mayor was offered in evidence and the validity of such ordinance depended upon the existence of one or more facts at the time of the enactment thereof, the existence and not the nonexistence of the necessary facts to sustain the validity of the ordinance should be presumed in the absence of evidence to the contrary. (See also *Horner v. City of Atchison*, 93 Kan. 557, 144 Pac. 1010.)

In *State, ex rel., v. City of Hutchinson*, 109 Kan. 484, 487, 207 Pac. 440, we held that it should be presumed that a city complied with the law in passing an ordinance and such presumption should not be overthrown except by the clearest and most convincing evidence; that the time will soon come when cities will be unable to prove either their corporate existence or their territorial limits by

proper record evidence. When that time comes, presumptions in favor of the cities must be resorted to. (McQuillin's Municipal Corporations, 3rd Ed., Vol. 6, § 20.07.)

The ordinance was a valid ordinance and when Pearl Avenue was vacated, the strip of land in question reverted one-half to the property now owned by plaintiffs and one-half to the property owned by defendant.

The other question presented is whether thereafter defendant acquired title to the east half of Pearl Avenue by adverse possession. Plaintiffs contend that defendant's evidence failed to show adverse possession in him and his predecessors in title for more than fifteen years (G. S. 1949, 60-304) prior to the filing of the instant action. It may be stated that the question of adverse possession is one of intention. The intent with which the occupant has held possession is to be determined from all of the surrounding circumstances and especially from the acts of the possessor. His intention need not have been manifested by word of mouth. To constitute adverse possession of land, it is not absolutely necessary that there should be inclosure, buildings or cultivation, but the acts done must be such as to give unequivocal notice of the claim to the land adverse to the claims of all others and must be of such a character and so openly done that the real owner will be presumed to know that a possession adverse to his title has been taken. No paper evidence of a transfer of possession of land held under a claim of the first entry is necessary. When the possession of real estate is actual, it may commence in parol without deed or writing and may be transferred and passed from one occupant to another by parol or bargain and sale accompanied by delivery. (*Tucker v. Hankey*, 173 Kan. 593, 250 P. 2d 784; *Casner v. Common School District No. 7*, 175 Kan. 551, 265 P. 2d 1027; *Common School District No. 45 v. Lewis*, 177 Kan. 261, 278 P. 2d 596; 2 C. J. S., Adverse Possession, 519, § 7.)

Applying the foregoing rules to the facts before us, we conclude that there was ample evidence to establish title in defendant. Shortly after the vacation of Pearl Avenue in the year 1905, defendant's predecessor in title fenced the property and placed valuable improvements thereon, including a barn.

Mr. Donnelly, city attorney of Stafford for approximately thirty-three years, testified that he knew defendant's predecessor Richardson claimed title to all of Pearl Avenue west of plaintiffs' property; that a resolution had been passed by the city council in June,

1929, and the proceedings had by the council referred to the Richardson property as including what was formerly all of Pearl Avenue; and that Richardson paid the cost of placing the curb and gutter and street improvements in front of what was formerly platted as Pearl Avenue lying west of plaintiffs' property.

A Mr. Davis testified that he had lived in Stafford for twenty-five years; that he purchased from Richardson a fence which enclosed the area formerly platted as Pearl Avenue; that Richardson placed improvements on the tract and the barn was located on the property in question.

A Mrs. Bowman testified that Richardson enclosed Pearl Avenue with a fence and the barn was located thereon; that Richardson had a junkyard and junked old cars on the property.

Mayor Erhart testified that he had lived in Stafford since 1920, was familiar with the Richardson property; that it was fenced and had a house and barn on it and was first used for farming; that afterwards it became a junkyard and a salvage place; that it was enclosed by a barbed wire fence; and that the witness had at one time pastured a cow on the property within the enclosure.

The defendant testified that he was claiming ownership to all of Pearl Avenue since he purchased it in 1948; that he remodeled the buildings and erected a fence to protect the land, that he occupied this property prior to the time plaintiff's predecessor built on the property east of Pearl Avenue; and that he had been paying taxes on the property since he purchased it.

This and other evidence clearly disclosed that defendant and his predecessors in title had exercised continuous, open, notorious, exclusive and adverse possession of the property in question for more than thirty-five years. The trial court, in applying the mentioned rules to the evidence presented, found that defendant had a clear case of adverse possession of all of Pearl Avenue, the property in question; that for more than thirty-five years the possession of defendant and his predecessors was exclusive, hostile, actual, open, notorious and uninterrupted, and entered judgment quieting defendant's title thereto. The court, having heard the evidence and entered its judgment, we cannot say there was not sufficient evidence to sustain it. The principle is well settled in this state that the determination of issuable facts is no concern of the appellate court, provided there is sufficient evidence upon which the judgment can be based. (*Tucker v. Hankey,* supra.)

We said in *Ames v. Brooks,* 179 Kan. 590, 297 P. 2d 195:

"Where there is dispute or doubt as to whether the occupant of lands claims adversely so as to acquire title by adverse possession, a question of fact is presented to be determined by the trier of the facts, and the determination so made, if based upon substantial competent evidence, is binding on appeal." (Syl. 4.)

We find nothing in the record approaching reversible error. The findings and judgment of the trial court are based upon substantial, competent evidence and, such being the case, will not be disturbed upon appeal. The judgment of the trial court is affirmed.

It is so ordered.