No. 41,740

EDMUND F. WILSON, *Appellee*, v. TURNER P. BURGESS and ANNA K. BURGESS, his wife, *Appellants*.

(350 P. 2d 776)

Opinion filed April 9, 1960.

A. *Harry Crane*, of Topeka, argued the cause, and *Ward D. Martin, Arthur L. Claussen*, and *Harvey D. Ashworth*, all of Topeka, were with him on the briefs for the appellants.

*Jacob A. Dickinson*, of Topeka, argued the cause, and *Sam A. Crow, Jack C. McCarter, Ralph E. Skoog*, and *Hart Workman*, all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

JACKSON, J.: Wilson brought this suit to enjoin Burgess and wife from maintaining a continuing trespass upon plaintiff's land and prayed for damages to compensate him for the past trespass. After a trial to the court, plaintiff received a decree enjoining defendants from continuing to encroach upon plaintiff's premises and awarding plaintiff the sum of $500 for past injuries. Defendants have appealed.

It must be observed at the outset, that the facts of this case were pretty well agreed upon. Plaintiff and defendants are next door neighbors on the east side of Oakley avenue, between Sixth and Seventh streets, in Topeka. By the descriptions in the original deeds of the parties, each of their two lots was fifty feet wide, and the north line of the plaintiff constituted the south line of the defendants. The record shows that the entire block and the now existing lots and parcels of land were carved out of a tract of land conveyed to one J. A. Watson in 1921. This Watson tract was de-

scribed as 40 rods north and south, by 20 rods east and west. The description began at the northwest corner of the northwest quarter of section 35, township 11, range 15, etc., which was apparently a point in the center of Sixth street. The first call of the description in the Watson deed was 40 rods south. Watson and his successors in title have divided the Watson tract into the present lots and parcels without ambiguity in the descriptions contained in the various deeds.

The trouble which gave rise to this action seems to have arisen in the following manner. Defendant, Burgess, is a civil engineer and had formerly been engaged in surveying work for an oil company. He seems to have taken upon himself the work of surveying the length of the 40 rod call of the original Watson tract noted above. He testified that he found an overage of 3.2 feet therein. He did not testify as to where the extra feet were on the 40 rod line. It may be noted that all of the descriptions in the various deeds dividing up the original Watson tract begin with a call running south on the original 40 rod line with the exception of the description in plaintiff's lot. In 1956, plaintiff purchased the north fifty feet of a parcel of land owned by William R. Mallory, who had purchased his land from Watson.

It would seem that Burgess thereafter purchased from the heirs of Watson by quitclaim deed a parcel of land which may be here designated as the 3.2 feet south of his original fifty foot lot. This deed seems to have been recorded as of October 11, 1957.

In the late fall or early winter of 1957, defendants built a five foot high woven-wire fence some three feet south of the north line of plaintiff's fifty foot lot. He also built a garage which plaintiff claimed encroached upon his land.

With matters in the above condition, the instant suit was timely begun. We do not believe that it is necessary to set out herein all of the district court's findings. Finding No. 4 reaches the crux of the lawsuit and reads as follows:

"4. That there is no ambiguity nor uncertainty in the descriptions of said lands owned by plaintiff and the defendants respectively; that the North line of the plaintiff's land is identical with and is the same as the South line of the defendant's land above described, and that said boundary line was recognized by the predecessors in title of both the plaintiff and the defendants as the true and proper boundary line between said tracts of land by the setting of survey pins, the erection of fences, the construction of sidewalks and the exercise of dominion and possession, all in recognition of said boundary line

which boundary line is 394 Feet South of the Northwest Corner of the Northwest Quarter of the Northeast Quarter of Section 35, Township 11, Range 15."

As may be expected, defendants attack the above finding No. 4. But we must confess the argument seems unconvincing. Defendants' own witness McCracken admitted on cross examination that he knew of no proration practice among surveyors which would prorate the overage there was as being situate between the properties of plaintiff and defendants. He further said that the only method of so assigning the space of 3.2 feet to that location would be to find that there had been the deliberate leaving of a strip at that location. He agreed that there was nothing to show that a strip had been left.

In defendants' brief is cited the case of *Miller v. Land Co.,* 44 Kan. 354, 24 Pac. 420, and the second paragraph of the syllabus is quoted. It would appear the syllabus is in accord with the testimony of witness McCracken just noted *supra,* and we are unable to understand how the case is thought to help defendants' claim to the ownership of 3.2 feet at that particular place involved in this case.

In final analysis, this case turns largely on questions of fact. Without extending this opinion by recounting the evidence, we believe that it was amply sufficient to raise a question of fact as to whether the predecessors of both parties did not assert the line between the two lots as the true property line for many years all as summarized by the trial court. Where adverse possession becomes a matter of fact, the decision of the trial court is binding upon this court, if supported by evidence. We direct attention to *Tucker v. Hankey,* 173 Kan. 593, Syl. ¶ 6, 250 P. 2d 784; and *Ames v. Brooks,* 179 Kan. 590, Syl. ¶ 4, 297 P. 2d 195.

The evidence shows that in 1930, Mallory, plaintiff's predecessor in title, became the owner of a tract of land which had as its boundary plaintiff's present north boundary.

Defendants' immediate predecessor in title, the Hornbecks, acquired title to defendants' lot in 1937. Even this last date would be twenty years before defendants attempted to move over on to the land of plaintiff.

The defendants also contend that the damages of $500 allowed by the court were not supported by the evidence, and that there was no evidence introduced upon the question of damage. We cannot agree with the above contention. It was shown that defendants had with their eyes open purchased a questionable de-

fense to an action of trespass *quare clausum fregit* or ejectment, and then moved onto and occupied some 300 square feet of their neighbor's real estate. They openly invited a lawsuit. The plaintiff chose to invoke the equitable jurisdiction of the court because of the continuing trespass, but that did not affect his right to damages for the trespass to the date of the decree. It should be noted that in equity the decree usually speaks as of the time of the decree and not as of the time of the instigation of the action, cf. 30 C. J. S. 990, § 600.

Furthermore, while at common law it was necessary to remove the defendant from real estate by an action of ejectment before bringing an action of trespass for mesne profits, it has always been the rule of this court that the action of ejectment and trespass for mesne profits could be joined, cf. *Gatton v. Tolley*, 22 Kan. 678. Thus, there cannot be a question as to plaintiff's right to recover damages in the instant suit.

In ancient times, substantial damages might be recovered in trespass without proof, but in modern times the rule is that only nominal damages may be recovered. In this suit, it was not disputed that defendants had occupied 300 square feet of plaintiff's land and had caused the plaintiff the expense of bringing the action.

The general rules as to damages in trespass to real estate are adequately set forth in the opinion in *Longenecker v. Zimmerman*, 175 Kan. 719, 267 P. 2d 543, and the authorities cited therein, and see further 87 C. J. S. 1072, § 117; 52 Am. Jur. 873, § 49. The right to recover for the costs of an action to recover real estate from a trespasser is specifically dealt with in the case of *Fowler v. Owen*, 68 N. H. 270, 39 Atl. 329. In that case, the supreme court of New Hampshire used language in the opinion which is particularly applicable to the present case at bar, when it said:

"At common law, after a party obtains judgment in ejectment he may maintain trespass for mesne profits and recover, as a part of the damages, the costs necessarily incurred in the action of ejectment. 1 Chit. Pl. *192, *196; 2 Chit. Pl. *870; *Aslin v. Parkin*, 2 Burr. 665; *Nowell v. Roake*, 7 B & C. 404; *Symonds v. Page*, 1 C. & J. 29; *Baron v. Abeel*, 3 Johns. 481. In *Nowell v. Roake*, a judgment recovered by the defendant in ejectment was reversed upon a writ of error, and it was held that the costs in the writ of error, taxed as between attorney and client, were recoverable as a part of the damages in the action for mesne profits. Lord *Tenterden*, C. J., said: 'The expenses incurred in the court of error were part of the damages sustained by the

plaintiff, by reason of his having been wrongfully kept out of possession by the act of the defendant.'

"The right to recover the expenses of the former action depends upon the necessity for the action and not upon its particular form. It is immaterial that the plaintiff's preliminary proceedings were in equity instead of law. The necessary consequence of the defendant's acts was to compel the plaintiff to resort to an equitable or legal action in order to obtain his rights."

From the above it is plain that the learned trial judge was able to determine from the evidence in this case that the injuries to plaintiff from the trespass of the defendants would exceed the amount sued for. Therefore, the court was justified in giving judgment in the sum of $500, the amount sued for in plaintiff's petition.

Since no reversible error has been made to appear, the judgment of the district court must be affirmed. It is so ordered.